STATE of Indiana, Appellant–Plaintiff,

v.

Natasha DURRETT, Appellee–
Defendant.

No. 29A05–0910–CR–612.

Court of Appeals of Indiana.

March 12, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, for Appellant.

Lawrence M. Hansen, Hansen Law Firm, LLC, Noblesville, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The State appeals the trial court's dismissal of a case in which Natasha Durrett allegedly drove a van that struck someone, resulting in serious bodily injury to that person, and allegedly failed to return to the scene of the accident. The State contends that the trial court abused its discretion in concluding that the absence of the van, the victim, and the investigating officer warrants dismissal. We find no evidence of bad faith in the State's failure to preserve the van, no denial of Durrett's right of confrontation due to the victim's absence as a witness, and no evidence of bad faith in the State's failure to provide discovery. Accordingly, we conclude that the trial court abused its discretion in granting Durrett's motion to dismiss. We therefore reverse.

### Facts and Procedural History

On October 9, 2004, in Westfield, Indiana, Durrett allegedly drove a van that struck Whitney Uphold, resulting in serious bodily injury to Uphold, and allegedly failed to return to the scene of the accident. Officer Charles Pulfer of the Hamilton County Sheriff's Department was dispatched to the scene. During the course of the investigation, Officer Pulfer spoke with witnesses who said that Durrett, her boyfriend Jeremy Frantzreb, and her friend Jesse Schoolcraft drove up to Uphold, Ben Loller, and two others on Washington Street. Schoolcraft argued with Loller, and at some point, Durrett, Frantzreb, and Schoolcraft were back in the van. The accounts then diverge. Loller, Schoolcraft, Uphold, and two others said no one was approaching the van when Durrett veered toward Uphold, struck her, and drove off. Loller additionally stated that he beat the van with his fists before Durrett drove off, breaking a window, because Uphold was pinned underneath it. Conversely, Durrett and Frantzreb said Loller ran toward the van with a shovel, and when Durrett swerved to avoid him, she struck a fence. Loller then started beating the van with the shovel, so Durrett drove off.

Officers Pulfer and Kija Ireland located the van in Indianapolis and took photographs of it. Both sides of the van displayed damage. Boggs Wrecker Service, Inc., then towed the van to Boggs' lot in Noblesville. Although the van was released from investigative hold on October

21, 2004, Frantzreb, the registered owner, never claimed it. The fees for towing, recovery, and storage time continued to accrue, and after waiting the statutory time period, Boggs submitted a request to the Indiana Bureau of Motor Vehicles to sell the van. After the BMV notified Frantzreb regarding the prospective sale and received no response, it published a notice of the sale of the van in The Indianapolis Star. When the van did not sell at auction, Boggs sold the van on January 13, 2005, to a buyer who used it for scrap parts.

On February 14, 2005, the State charged Durrett with Class C felony criminal recklessness resulting in serious bodily injury [1] and Class D felony failure to return to the scene of an accident resulting in serious bodily injury.[2] Durrett appeared for her initial hearing in March 2005. Due to multiple continuances requested by Durrett and granted by the trial court and resetting due to court congestion, the jury trial was ultimately rescheduled for April 20, 2009.

In the meantime, over three years after the sale of the van, in September 2008, Durrett filed a Motion for Physical Inspection, in which she requested the opportunity to inspect and photograph the van. The trial court granted the motion. Also in October 2008 Durrett filed a Motion to Compel Supplemental Discovery, in which she requested the court to compel the State to provide the current addresses for the State's listed witnesses, which included Uphold and Officer Pulfer. The State responded to the motion to compel, noting that Durrett had verbally informed the State within the last two weeks that she could not locate the witnesses. The response also provided the addresses of some witnesses and requested additional

time to locate the other witnesses. The trial court first granted Durrett's motion, then denied it the next day and gave the State thirty days to provide the addresses. The order denying the motion also indicated that Durrett could refile her motion to compel in the event the State was unable to provide the addresses. Later in October, the State filed a Motion for Extension of Time. The motion indicated, "Unbeknownst to counsel for the State, the lead detective, Charles Pulfer, no longer works for the Hamilton County Sheriff's Office. Counsel received a letter to that effect on October 20, 2008." Appellant's App. p. 63. The State's motion also indicated that it was in the process of determining the whereabouts of the van. The trial court granted the motion, giving the State fifteen additional days.

On April 17, 2009, Durrett filed a Motion to Dismiss or in the Alternative to Bar Evidence. The motion stated that: (1) the van had been sold and although photographs were taken of the van, the State had not yet located them; (2) the State had advised Durrett on April 14, 2009, that Officer Pulfer resides in Florida, it was unlikely the State would call him as a witness, and Officer Pulfer "does not accept phone calls regarding his former cases and will not accept a subpoena served via mail," id. at 82; and (3) Durrett could not locate Uphold. The State provided Durrett with photographs of the van the same day.

A hearing on the motion was held on April 20, 2009, the day the jury trial was set to begin. The State noted that it took time for Officer Ireland to locate the photographs because they were not indexed as a criminal case. Tr. p. 40. Durrett acknowledged that she received photographs

---

1. Ind.Code § 35–42–2–2(d)(1).

2. Ind.Code §§ 9–26–1–1(2), –8(a)(1)(A).

showing damage to the right side of the van and that Officer Ireland would be available to lay the proper foundation for the photographs. Durrett nonetheless argued for dismissal because the van had been sold and the photographs were not sufficient, the State failed to seize the shovel, and Officer Pulfer and Uphold were not testifying at trial. The trial court granted the motion to dismiss, finding that the cumulative effect of the missing van and the absence of Uphold and Officer Pulfer would deny Durrett her fundamental rights to due process and to confront her accusers. The State filed a motion to correct error, which was deemed denied. The State now appeals.

### Discussion and Decision

 The State argues that the trial court abused its discretion by granting Durrett's motion to dismiss. We restate the issues as whether the absence of the van, the absence of Uphold as a witness, and the State's failure to provide discovery warrants dismissal. We review a trial court's ruling granting a motion to dismiss for an abuse of discretion. *State v. Fettig,* 884 N.E.2d 341, 343 (Ind.Ct.App.2008), *reh'g denied.* We therefore reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

### I. Absence of the Van

 The State contends that the absence of the van does not weigh in favor of dismissal. Durrett argues that the van constitutes material exculpatory evidence and that its absence violates her due process rights. When determining whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we must first decide whether the evidence is potentially useful evidence or material exculpatory evidence. *Land v.*

*State,* 802 N.E.2d 45, 49 (Ind.Ct.App.2004), *trans. denied.*

 Evidence is materially exculpatory if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Noojin v. State,* 730 N.E.2d 672, 675–76 (Ind.2000) (quoting *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." Black's Law Dictionary 597 (8th ed. 2004). A prosecutor's duty to preserve exculpatory evidence is limited to evidence that might be expected to play a significant role in the defendant's defense. *Noojin,* 730 N.E.2d at 675 (quoting *Trombetta,* 467 U.S. at 488, 104 S.Ct. 2528). Failure to preserve material exculpatory evidence violates due process regardless of whether the State acted in good or bad faith. *Blanchard v. State,* 802 N.E.2d 14, 27 (Ind.Ct.App.2004) (citing *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).

 Evidence is merely potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 26 (citing *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333). The State's failure to preserve potentially useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of the police. *Id.* at 26–27.

 Durrett argues that the van was material exculpatory evidence. At the hearing on the motion to dismiss, she said, "The biggest problem we have here is, the van is gone." Tr. p. 32. She argued that although the witnesses most favorable to

the State contend that Durrett struck Uphold with the van without justification, other witnesses contend that Loller jumped in front of the van with a shovel, Durrett swerved to avoid him, she believed she struck the fence and not Uphold, and she drove away after Loller began beating the van with the shovel. Durrett continued, "So I can't even inspect the right side of the van to provide the defense to this action." *Id.* at 34.

However, even if the van was available, it would not necessarily tend to establish Durrett's innocence. More specifically, even if the jury saw the damaged van, it only corroborates Durrett's statement that Loller beat the van with the shovel after she crashed into the fence. It does not show that Loller jumped in front of the van with the shovel, causing Durrett to swerve and hit Uphold. Nor does it provide any defense to the fact that Durrett failed to return to the scene of the accident. In short, no exculpatory value was apparent before the van was destroyed. *Cf. Youngblood,* 488 U.S. at 56 n. *, 109 S.Ct. 333 ("[R]espondent has not shown that the police knew the semen samples would have exculpated him when they failed to perform certain tests or to refrigerate the boy's clothing...."); *Terry v. State,* 857 N.E.2d 396, 407–08 (Ind.Ct.App. 2006) (finding the eyewitness testimony of four police officers to be the principal evidence linking Terry to the crime scene; thus, had Terry examined a pager, the disputed evidence, found in his path of flight, he could only establish, at most, that neither he nor anyone else connected to him owned the pager, which would not have exculpated him), *trans. denied; Land,* 802 N.E.2d at 51 (finding the alleged evidence of accelerant on the arson victim's shoes to be only potentially useful where the alleged evidence was not the sole basis of Land's defense and it was determined that the fire was not set with the use of accelerants); *Blanchard,* 802 N.E.2d at 27 (finding no apparent exculpatory value to photographs, in a prosecution for murder and neglect, where Blanchard asked this Court to speculate that the photos depicted his son as healthy and where such alleged evidence would not refute the fact that his son was chronically malnourished and anemic when he was admitted to the hospital). The most we can say is that the van was potentially useful. Further, as Durrett makes no claim that the State's failure to preserve the van was in bad faith, its absence does not warrant dismissal.

Moreover, to trigger the State's duty to preserve the van as evidence, there must also be no way for Durrett to obtain comparable evidence by other reasonably available means. Durrett acknowledged at the hearing that she received photographs showing damage to the right side of the van and that Officer Ireland would be available to lay the proper foundation for their admission into evidence. Although she argues that the photographs are "insufficient to [the] extent of damages without the investigating officer's testimony," Appellee's Br. p. 6, she cites nothing to establish why the photographs are insufficient. In light of Durrett's acknowledgement at the hearing that the photographs show damage to the right side of the van, she has failed to establish what else the photographs would need to show in order to be sufficient. We also find the photographs to be comparable evidence, and thus, the State had no duty to preserve the van as evidence.

 To the extent Durrett contends that the State's failure to recover the shovel prevents her from obtaining a fair trial, *id.* at 5, we likewise find that even if the jury saw the shovel, it does not show that Loller jumped in front of the van with it,

causing Durrett to swerve and hit Uphold. Nor does it provide any defense to the fact that Durrett failed to return to the scene of the accident. We find that the shovel had no apparent exculpatory value. At most, it constituted potentially useful evidence; however, Durrett's due process rights were not violated as she has failed to show bad faith on the part of the police.

## II. Absence of Uphold as a Witness

The State also contends that the absence of Uphold does not weigh in favor of dismissal. The State argues and Durrett acknowledges that the State was not required to call Uphold as a witness. However, Durrett argues that Uphold's absence denies Durrett her right of confrontation. The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." "The essential purpose of the Sixth Amendment right of confrontation is to ensure that the defendant has the opportunity to cross-examine the witnesses against him." *Howard v. State,* 853 N.E.2d 461, 465 (Ind. 2006) (citing *State v. Owings,* 622 N.E.2d 948, 950 (Ind.1993)). Here, Uphold has not provided a deposition and is not appearing at trial. Because the State, who also cannot locate Uphold, is not using her as a witness, she is not a witness against Durrett. The right of confrontation with regard to Uphold is not implicated.

## III. Failure to Provide Discovery

Although the trial court did not indicate in its order any bad faith on the part of the State in its compliance with discovery, Durrett argues that the State's failure to provide: (1) Uphold's current address; (2) photographs of the van in a timely manner; and (3) Officer Pulfer's current address weighs in favor of dismissal. A trial court is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. *State v. Montgomery,* 901 N.E.2d 515, 523 (Ind.Ct.App.2009), *aff'd on reh'g,* 907 N.E.2d 1057 (Ind.Ct.App.2009). It therefore must be given wide discretionary latitude in discovery matters, and absent clear error and resulting prejudice, we will not overturn. *Id.* The dismissal of charges is a sanction within the arsenal of the trial judge if the State fails to afford the defense access to evidentiary materials as ordered. *Id.* (citing *Robinson v. State,* 450 N.E.2d 51, 52 (Ind.1983)). In determining whether dismissal is proper, we must consider whether the breach was intentional or in bad faith and whether substantial prejudice resulted. *Id.*

Regarding Uphold, Durrett argues, "Despite having notice [of defective witness addresses] since October 16, 2008, the State failed to produce accurate address information [f]or the complaining witness, Up[hold]. The [S]tate noticed Up[hold]'s deposition for March 19, 2009. She failed to appear. As of April 20, 200[9], the morning of trial, Up[hold] had still not been located." Appellee's Br. p. 7 (citation omitted). While Durrett thus asserts that the State did not provide Uphold's address, she fails to cite any evidence, and we find none in the record, showing that the State's failure was intentional or in bad faith. In fact, the evidence shows that the State put forth a great deal of effort in trying to find Uphold. The prosecutor stated at the hearing:

> We have made, what I consider extraordinary efforts, to find Whitney Uphold.... [We] ha[ve] done things such as contact her family members. I believe one of her relatives gets off the school bus at the house where they use[d] to live and someone picks the child up at that house to maintain the

child still being able to go [to] that school. And [we] went to the extent of s[i]tting there, I believe on Thursday afternoon, hoping to find someone who picked the child up and [we] could interview that person, and it would be someone who would know where Whitney Uphold is and we would be able to find her and actually get her served with a subpoena.

I would also inform the Court that Whitney Uphold has a conviction for public intoxication out of one of the Courts here in Hamilton County and is on probation, and there is a warrant out for her arrest for failure to comply with the terms of that probation. It is just my speculation that she doesn't want to come here because she thinks that she will be arrested. Which she would be. But it is not the kind of thing that really should prevent her from coming here. . . .

Tr. p. 41–43. We find that the State did not act intentionally or in bad faith in failing to provide Durrett with Uphold's current address.

Regarding photographs of the van, Durrett contends that she received photographs of the van four days before trial and should have received them sooner. Appellee's Br. p. 9. The State noted at the hearing that it took time for Officer Ireland to locate the photographs because they were improperly filed:

I believe Officer Ireland would testify to the Court today, when I call her and if it is relevant and if the Court wants to hear it. That where she eventually found the photographs of the van was not under an indexing that would account for a criminal case. It was under the victim's name. Which I believe she would testify that the[ ] way they are indexed and cataloged and kept when you are talking about an investigation of

an accident scene. And I don't mean the technical term of accident as it is a defense in criminal law, but the term accident as it is just in the normal course of living where a car hits something. Without any criminal intent being involved. I believe that would be the reason why we had trouble finding the photographs.

Tr. p. 40. We find no indication of bad faith on the part of the State.

Finally, Durrett argues that the State failed to provide Officer Pulfer's current address. Durrett filed her motion to compel the discovery of witness addresses in October 2008, two weeks after she verbally notified the State that she could not locate witnesses. The State provided some addresses and requested more time to locate the other witnesses, including Officer Pulfer. The trial court ultimately denied Durrett's motion to compel but did indicate that it would reconsider its ruling in the event that the State was unable to provide the addresses. The State then filed a motion for extension of time, in which it stated that it had recently received a letter indicating that Officer Pulfer no longer worked for the Hamilton County Sheriff's Department. In April 2009 the State advised Durrett that Officer Pulfer resides in Florida and "does not accept phone calls regarding his former cases and will not accept a subpoena served via mail." Appellant's App. p. 82. At the hearing, the prosecutor stated, "And as far as Detective Pulfer is concerned. I let the defense counsel know that as soon as I knew it." Tr. p. 53. While defense counsel did not dispute this, he earlier alleged, "I think the police agencies did not communicate with the prosecutors. However, that is not the Defendant's problem. Unfortunately for the purposes of considering this the State is the State." *Id.* at 38. Durrett does not even allege that the prosecutor or the po-

lice acted in bad faith, and we find no evidence of such in the record. Rather, the prosecutor admitted that he had failed to follow through with defense counsel's request for Pulfer's address but said that he did not follow through because he thought the case was settling:

> Part of what happened in this case though involves plea negotiations. And that we thought that we had the case settled. It turned out that we didn't.
>
> And I am not saying that [defense counsel] did anything wrong, or mislead me in any way on that, but when you are getting ready for three or four trials at a time and you think you have one settled, you kinda set that one aside and go to the next one on the list. And it is nobody's fault, it is not the Court's fault it is just the nature of our business.
>
> So steps that I might have taken a week ago I didn't take because I didn't think I would be trying this case, this morning.

*Id.* at 52–53. We find no bad faith on the part of the State.

The trial court found that the cumulative effect of the absence of the van, Uphold, and Officer Pulfer denied Durrett her fundamental rights to due process and to confront her accusers. We find no evidence of bad faith in the State's failure to preserve the van, no denial of Durrett's right of confrontation due to Uphold's absence as a witness, and no evidence of bad faith in the State's failure to provide discovery. Accordingly, we conclude that the trial court abused its discretion in granting Durrett's motion to dismiss.

Reversed.

CRONE, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent. The trial court determined that the cumulative effect of the missing instrumentality alleged to have been used in Durrett's act (the van), the missing alleged victim, and the unavailability of the lead investigating officer endangered Durrett's fundamental due process rights. I fail to see how we are in a position to determine that the trial court's decision "is clearly against the logic and effect of the facts and circumstances," which is the standard we must apply when reviewing the trial court's dismissal. *State v. Fettig,* 884 N.E.2d 341, 343 (Ind.Ct.App. 2008), *reh'g denied.*

The investigating police officer determined that it was necessary to impound the van for investigation, but then permitted the van to be sold months later. The majority has concluded that "even if the van was available, it would not tend to establish Durrett's innocence." Op. at 454. In my opinion, that is merely speculation. Without the van, we cannot ascertain what may or may not be confirmed by its condition after the incident. If the condition of the van was to discredit a material witness' account of the events, the trier of fact may also find reason to discredit other testimony by that same witness. Moreover, Durrett's counsel never had the opportunity to inspect the van as it was sold for parts prior to criminal charges being filed against her.

As for Uphold, not only was the State unable to locate her at the time of the trial, but she also failed to appear for a scheduled deposition. Undoubtedly, Uphold has a perspective of the incident that no other witness shares. It is possible that her testimony would demonstrate that the driver of the van would not have been able to see her when she was struck.

Finally, Officer Pulfer likely knows more about the versions of events given by the witnesses at the time of the incident than anyone else. Without his testimony it will be difficult, if not impossible, for Durrett's counsel to ascertain whether a witness' testimony at trial is significantly different then their account shortly after the incident.

Can we be certain that Durrett would have developed exculpatory evidence from the van, the alleged victim, or Officer Pulfer? No. But for the same reason, we can only speculate that she would not, and, therefore, I cannot agree that the trial court's dismissal was clearly against the logic and effects of the facts and circumstances.