# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Nov 10 2015, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin L. Simons, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 10, 2015 <br><br> Court of Appeals Case No. 43A04-1501-CR-10 <br><br> Appeal from the Kosciusko Superior Court <br><br> The Honorable Joe V. Sutton, Judge <br><br> Trial Court Cause No. 43D03-1402-FC-134 |

**Altice, Judge.**

## Case Summary

Kevin Simons appeals his convictions and sentence for Operating a Vehicle as a Habitual Traffic Violator,[1] a class C felony; Battery[2] as a Class B misdemeanor; Resisting Law Enforcement[3] as a Class A misdemeanor; and Operating a Vehicle While Intoxicated[4] as a Class D felony. Simons presents five issues for our review, which we restate as follows:

1.  Did the trial court abuse its discretion in denying Simons's motion to dismiss?

2.  Did the trial court abuse its discretion in admitting into evidence the laboratory report of Simons's blood draw?

3.  Does Ind. Code § 35-36-11-1 violate the Confrontation Clause of the United States and Indiana Constitutions?

4.  Is the evidence sufficient to establish that Simons was "operating" a vehicle so as to sustain his convictions for operating a vehicle as a habitual traffic violator and operating a vehicle while intoxicated?

5.  Is Simons's sentence inappropriate?

---

[1] Ind. Code § 9-30-10-17. Effective July 1, 2014, this offense was reclassified as a Level 5 felony. Because Simons committed this offense prior to that date, it retains its prior classification as a Class C felony.

[2] Ind. Code § 35-42-2-1.

[3] Ind. Code § 35-44.1-3-1(a)(1).

[4] I.C. § 9-30-5-1(b); I.C. § 9-30-5-3(a)(1). Effective July 1, 2014, the latter statute was amended and now classifies this offense as a Level 6 felony. Because Simons committed this offense prior to that date, it retains its prior classification as a Class D felony.

[2] We affirm.

## Facts & Procedural History

[3] On the night of February 4, 2014, Steven Fields was driving home from work when he saw a car on top of a snow bank near The Frog, a local tavern in Syracuse. Fields called 911 and reported, "There's a guy in front of The Frog that just ran his vehicle up on top of a snow embankment." *State's Exhibit* 1. Fields also stated to the 911 operator that the driver appeared to be "very drunk." *Id*. Fields passed the scene, but circled back around to wait for a police officer to arrive.

[4] Officer Joseph Keene of the Syracuse Police Department was dispatched around 11:17 p.m. on a report of a vehicle stuck in the snow. Upon arrival at the scene, Officer Keene observed a small green car mostly out of the roadway and stuck on top of a snow bank just as reported. Officer Keene also observed a white truck backed up to the car. Officer Keene activated his emergency lights and pulled his police car in behind the green car. Officer Keene then directed Reserve Officer Mike Barger, who was riding along with Keene, to speak with the individual in the white truck while he went to speak with the driver of the green car.

[5] As Officer Keene approached the green car, he noted that the car's engine was running and the car was in gear, as he heard the sound of the green car's tires spinning in the snow. The driver's side door was open and Officer Keene observed Simons sitting in the driver's seat of the car. No one else was in the

car. Officer Keene first asked Simons if he was okay and Simons indicated he was. Simons then volunteered that he "was trying to get home." *Transcript* at 254. Officer Keene noticed a strong odor of an alcoholic beverage coming from Simons's breath. He further observed that Simons's "speech was very slurred," he "had [a] terrible time enunciating his words," and he was not responding to Officer Keene's requests. *Id.* at 256. Specifically, it took Simons several attempts to turn the car's engine off after Officer Keene told him to do so. Simons also fumbled with retrieving his wallet out of his pants pocket so he could access his identification card.

[6] Officer Keene returned to his police car to process Simons's identification card, at which time he learned that Simons had a lifetime suspension on his record and was classified as a habitual traffic violator. He then returned to the car and asked Simons to participate in field sobriety tests. Simons initially agreed to participate in the horizontal gaze nystagmus test, but ultimately refused to complete it or participate in any further field sobriety tests. Simons also informed Officer Keene that he would not agree to a certified chemical test. Officer Keene then placed Simons under arrest and, believing Simons may have been too intoxicated to be taken to jail, transported him to a local hospital for medical clearance.

[7] Once at the hospital, Simons maintained that he was not the driver of the car and again refused to cooperate by submitting to a chemical test. Officer Keene then prepared a probable cause affidavit and request for a search warrant seeking to obtain a blood sample from Simons. Based upon the information

Officer Keene provided in the probable cause affidavit, a judge issued a search warrant to obtain a blood sample from Simons.

[8] At the hospital, Simons was "combative" with the officers and medical staff, especially when they tried to obtain his blood sample pursuant to the search warrant. *Id.* at 311. Simons was flailing, kicking his legs, and causing such a commotion in the room at the hospital that additional staff entered to help restrain him. In total, it took six individuals to restrain Simons for purposes of the blood draw. Officer Keene described Simons's demeanor as being "extremely angry." *Id.* at 269. During the altercation, Simons kicked Linnia Woods, a phlebotomist who was helping to restrain Simons for the blood draw, in the wrist. An analysis of Simons's blood revealed that he had a blood alcohol level of .251.

[9] On February 20, 2014, the State charged Simons with operating a vehicle as a habitual traffic violator, a Class C felony; battery as a Class D felony; operating while intoxicated, a Class A misdemeanor, along with an enhancement for operating while intoxicated as a Class D felony; and resisting law enforcement as a Class A misdemeanor. Contemporaneously with the charging information, the State filed a Notice of Intent to Introduce Lab Report pursuant to Ind. Code § 35-36-11-2.

[10] On January 16, 2015, the State sought to amend the battery charge to a Class B misdemeanor and to allow for a habitual offender enhancement. On the same day, Simons filed a belated motion to dismiss the charges against him based

upon the loss or destruction of evidence. Following a hearing, the trial court denied Simons's motion to dismiss. The court also granted the State's motion to amend, but informed Simons that as a result, he was entitled to a continuance of the jury trial if he so wished. When Simons requested a continuance, the State moved to dismiss the habitual offender enhancement.

[11] A two-day jury trial commenced on January 27, 2015. Before the start of the trial, the parties filed a written Offer of Stipulation, wherein Simons admitted that his driving privileges were validly suspended for life on the day in question. A motion in limine covered other aspects of Simons's driving record. At the conclusion of the evidence, the jury found Simons guilty of operating a vehicle as a habitual traffic violator, battery, resisting law enforcement, and operating a vehicle while intoxicated. Simons then pleaded guilty to the enhancement of operating a vehicle while intoxicated as a Class D felony. The trial court held a sentencing hearing on February 23, 2015, and sentenced Simons to an aggregate term of six years and nine months executed. Additional facts will be provided where necessary.

### 1. Motion to Dismiss

[12] Simons argues that the trial court abused its discretion in denying his motion to dismiss. We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Ingram v. State,* 760 N.E.2d 615, 618 (Ind. Ct. App. 2001), *trans. denied.* In reviewing a trial court's decision for an abuse of discretion, we

reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[13] Simons's motion to dismiss is based upon his claim that there was a video of his arrest and that such video contained information that was materially exculpatory or was potentially useful to resolve any conflict between his and Officer Keene's testimony regarding the events leading up to his arrest. Simons maintains that the loss or destruction of the video recording of his arrest violates his due process rights, and therefore, the trial court should have dismissed the charges against him.

[14] When determining whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we must first decide whether the evidence is potentially useful evidence or materially exculpatory evidence. *State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010) (citing *Land v. State*, 802 N.E.2d 45, 49 (Ind. Ct. App. 2004), *trans. denied*). Specifically,

> [e]vidence is materially exculpatory if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Noojin v. State,* 730 N.E.2d 672, 675-76 (Ind. 2000) (quoting *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." Black's Law Dictionary 597 (8th ed. 2004). A prosecutor's duty to preserve exculpatory evidence is limited to evidence that might be expected to play a significant role in the defendant's defense. *Noojin,* 730 N.E.2d at 675 (quoting *Trombetta,* 467 U.S. at 488, 104 S.Ct. 2528). Failure to preserve

material exculpatory evidence violates due process regardless of whether the State acted in good or bad faith. *Blanchard v. State,* 802 N.E.2d 14, 27 (Ind. Ct. App. 2004) (citing *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).

Evidence is merely potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 26 (citing *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333). The State's failure to preserve potentially useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of the police. *Id.* at 26-27.

*Durrett*, 923 N.E.2d at 453.

[15] In November 2013 the Syracuse Police Department obtained new video recording equipment to install in two of its police cars. The video equipment was capable of recording events that occurred outside of the police car and could also record conversations that occurred within the passenger compartment of the vehicle. The video recording would automatically begin once an officer turned on the car's emergency lights. After the devices were installed, officers were trained on how to operate the video cameras. Officer Keene explained that he would periodically turn over the recording equipment to a supervisor, who would then download and save the data thereon to a different device.

[16] The incident involving Simons occurred on February 4, 2014. According to Officer Keene's testimony, he believed that the system was working at the time

of his encounter with Simons. Officer Keene further testified that in the days following his encounter with Simons, he turned the data from his recording device over to his supervisor to secure on a separate device. In April 2014, however, the Syracuse Police Department learned that there was an issue with the video recording equipment installed in their police vehicles. The police department contacted the manufacturer, who discovered that the recordings were in an incorrect format such that the data that had been recorded could not be downloaded and viewed. The police department permitted the manufacturer to reformat the video cameras' hard drives, which "wiped everything off the hard drive." *Transcript* at 72. The manufacturer worked with the police department to recover any missing data, but was able to recover only videos that were recorded after April 2014. Thus, the data that was transferred from Officer Keene's recording device to a second device shortly after the encounter with Simons was not recovered.

[17] Simons asserts that the video of his arrest as recorded by video equipment located in Officer Keene's police car was exculpatory, but he does not elaborate on how it is exculpatory other than to assert that it is an unbiased account of his arrest. The jury was presented with direct testimony from Officer Keene and Simons regarding the circumstances of Simons's arrest. To the extent there were conflicts, the jury was tasked with assessing the credibility of the witnesses. Simons's assertion, without more, is insufficient to establish that the recording of his arrest was materially exculpatory. *See Chissell v. State*, 705 N.E.2d 501, 504 (Ind. Ct. App. 1999) (noting that a court will not assume that

the destroyed evidence contained exculpatory material when the record is devoid of such indication), *trans. denied*.

[18] Simons also argues that the video recording of his arrest would have been potentially useful in his defense because it would have helped the jury to understand conflicts between his testimony and that of Officer Keene. To succeed on this argument, Simons must also establish that the police acted in bad faith. As noted by the trial court, the lack of a video recording of Simons's arrest is explained by the fact that "[t]he technology, the equipment failed. There was no recording created, so there was none to destroy on the part of the police. . . . It is just a technology failure that was accidental and not the making of the police . . . ." *Transcript* at 85. Having reviewed the record, we agree.

[19] Officer Keene testified that he believed the recording device in his car was working at all times and there was never any indication that there was any problem with device. He regularly turned the data over to his supervisor so that it could be stored on a separate device. It was not until a few months after Simons's arrest that it was discovered that the recording devices were operating in an incorrect format. The malfunction affected all recording devices installed by the Syracuse Police Department and the reformatting conducted by the manufacturer erased all data, not just that related to Simons's arrest. Simons has not established any bad faith on behalf of the police in not preserving, losing, or erasing, whatever the case may be, the recording of his arrest. The trial court did not abuse its discretion in denying Simons's motion to dismiss.

## 2. Admission of Evidence

Simons argues that the trial court abused its discretion in admitting into evidence the lab report showing the results of his blood draw because the blood draw was done pursuant to an invalid search warrant. Specifically, Simons asserts that the probable cause affidavit presented in support of the search warrant was inadequate in that it was based on Officer Keene's conclusions and inferences, not facts derived from direct observation or personal knowledge.

In his brief, Simons acknowledges that while his trial counsel objected to the admission of the lab report into evidence, the objection was not grounded on the claimed inadequacies of the probable cause affidavit. It is well settled that "a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." *Gill v. State*, 730 N.E.2d 709, 711 (Ind. 2000). In such case, the defendant has waived the issue raised on appeal. *See Griffin v. State*, 16 N.E.3d 997, 1005 (Ind. Ct. App. 2014). To avoid waiver, Simons argues that the admission of the lab report into evidence amounted to fundamental error. The fundamental error exception is extremely narrow and applies only when an error constitutes a blatant violation of basic principles of due process. *Isom v. State*, 31 N.E.3d 469, 490 (Ind. 2015). The error must be "so prejudicial to the rights of a defendant a fair trial is rendered impossible." *White v. State*, 846 N.E.2d 1026, 1033 (Ind. Ct. App. 2006), *trans. denied*.

In arguing that the search warrant was invalid, Simons points to what he claims to be misstatements made by Officer Keene in the probable cause affidavit and

inconsistencies between those statements and his testimony at trial. Simons also claims that many of Officer Keene's statements in support of the probable cause affidavit were not based on his direct observations. We have reviewed Simons's claims and conclude that there is no fundamental error. Each claimed misstatement or inconsistency is understood in the context of the situation and reasonable inferences drawn therefrom. Contrary to Simons's argument, evidence obtained in violation of constitutional protections against unlawful searches and seizures does not ipso facto require reversal. *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). Further, our Supreme Court has noted that the fundamental error exception is available only in "'egregious circumstances.'" *Id*. This is not one of those circumstances.

### 3. Confrontation Clause

[23] Simons challenges I.C. § 35-36-11-2 through 5, claiming that such notice-and-demand statutes are unconstitutional as applied to him. Specifically, Simons argues that such statutes violate his rights under the Confrontation Clause of both the United States and Indiana Constitutions.

[24] The notice-and-demand statutes challenged by Simons provide as follows:

> Sec. 2. If the prosecuting attorney intends to introduce a laboratory report as evidence in a criminal trial, the prosecuting attorney must file a notice of intent to introduce the laboratory report not later than twenty (20) days before the trial date, unless the court establishes a different time.

Sec. 3. If the defendant wishes for the person who prepared the laboratory report to be present at the trial for cross-examination, the defendant must file a demand for cross-examination not later than ten (10) days after the defendant receives the notice filed under section 2 of this chapter, unless the court establishes a different time.

Sec. 4. If the prosecuting attorney does not comply with section 2 of this chapter, the prosecuting attorney may not introduce the laboratory report into evidence without the testimony of the person who conducted the test and prepared the laboratory report.

Sec. 5. If the prosecuting attorney complies with section 2 of this chapter and the defendant does not comply with section 3 of this chapter, the defendant waives the right to confront and cross-examine the person who prepared the laboratory report.

I.C. 35-36-11. Here, the State filed its Notice of Intent to Introduce Lab Report in accordance with I.C. § 35-36-11-2 contemporaneously with the charging information, which was filed on February 20, 2014. Simons never filed a demand for cross-examination as required by I.C. § 35-36-11-3.

[25] At trial, when the State offered the lab report into evidence, Simons's trial counsel objected on grounds of lack of foundation and concerns over the chain of custody; he did not, however, object on constitutional grounds. As a general rule, the failure to object at trial results in waiver of an issue on appeal. *Bruno v. State,* 774 N.E.2d 880, 883 (Ind. 2002). The rule of waiver in part protects the integrity of the trial court in that the trial court cannot be found to have erred as to an argument that it never had an opportunity to consider. *T.S. v. Logansport*

*State Hosp.,* 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied.* Moreover, a defendant cannot object on one ground at trial and then present a different claim of error on appeal. *See Lyons v. State,* 976 N.E.2d 137, 141 (Ind. Ct. App. 2012). Simons's failure to object to the admission of the lab report on constitutional grounds results in waiver of the issue for appellate review.

### 4. Sufficiency

Simons argues that the evidence is insufficient to support his convictions for operating a vehicle as a habitual traffic violator and operating a vehicle while intoxicated. When reviewing a challenge to the sufficiency of the evidence, we consider only the evidence supporting the judgment, together with any reasonable inferences that can be drawn from such evidence, and we may not reweigh evidence nor judge witness credibility. *Thang v. State,* 10 N.E.3d 1256, 1258 (Ind. 2014). We will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (citing *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

The only element of both offenses that Simons challenges is whether the evidence sufficiently established that he "operated" a vehicle. An individual "operates" a vehicle when he or she is "in actual physical control of a vehicle." *West v. State*, 22 N.E.3d 872, 875 (Ind. Ct. App. 2014) (citing Ind. Code § 9-13-2-117.5), *trans. denied*. In assessing whether a person has operated a vehicle, this

court has considered several factors, including, but not limited to (1) the location of the vehicle when discovered; (2) whether the vehicle was in motion when discovered; and (3) additional evidence that defendant was observed operating the vehicle before he or she was discovered. *See Hampton v. State*, 681 N.E.2d 250, 251 (Ind. Ct. App. 1997). Here, we note that the jury was instructed as follows: "The term 'operate', means to navigate or otherwise be in actual physical control of a vehicle." *Appellant's Appendix* at 200.

[28] Officer Keene was dispatched in response to a 911 call that a car was stuck on top of a snow bank. When he arrived at the location, he observed a small, green car off on the side of the road, mostly out of the roadway, and on top of a snow bank. As Officer Keene approached the car, he noted that the wheels were spinning in the snow thereby indicating to Officer Keene that the car was in gear. Officer Keene approached Simons, who was sitting in the driver's seat, and after confirming Simons was not injured, asked Simons to put the car in park. Simons was the only individual in the car, and he informed Officer Keene that he "was trying to get home."[5] *Transcript* at 254. This evidence is sufficient to support the jury's conclusion beyond a reasonable doubt that Simons was in actual physical control of the vehicle and that he was trying to navigate the vehicle out of the snow bank. *See West*, 22 N.E.3d at 876 (holding evidence sufficient to establish defendant operated a car where the car was

---

[5] It was not until after he was transported to the hospital that Simons claimed he was not the driver of the green car that was stuck in the snow bank.

parked in a public spot, the driver explained that she had come to the courthouse that day, and when the officer approached the vehicle, the vehicle was running and defendant was sitting in the driver's seat). The evidence supports the jury's determination that Simons operated the vehicle.

### 5. Sentencing

As noted above, the trial court sentenced Simons to an aggregate term of six years and nine months imprisonment. The sentence is broken down as follows: one-hundred eighty days executed for battery as a class B misdemeanor and ninety days executed for resisting law enforcement as a Class A misdemeanor with the sentences to run consecutive to one another; six years for Class C felony operating a motor vehicle after lifetime forfeiture of driving privileges and one and one-half years for Class D felony operating a vehicle while intoxicated with a prior conviction, with these sentences to be served concurrent to one another and consecutive to the sentences imposed for battery and resisting law enforcement. Simons argues that his sentence is inappropriate.

Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State,* 9 N.E.3d 1274, 1292 (Ind. 2014). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is

inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State,* 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State,* 972 N.E.2d 864, 876 (Ind. 2012). Appellate Rule 7(B) analysis is not to determine "whether another sentence is *more* appropriate" but rather "whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Simons bears the burden on appeal of persuading us that his sentence is inappropriate. *See Conley,* 972 N.E.2d at 876.

[31] With regard to the nature of the offense, we note that the circumstances surrounding the operating offenses were unremarkable. Later, however, Simons was uncooperative and eventually became combative toward hospital staff. With regard to the character of the offender, the record details Simons's lengthy history of criminal activity, which includes nearly a dozen prior felony convictions and several prior misdemeanor convictions, many of which were alcohol-related offenses. We further note that Simons has been afforded leniency on numerous occasions, but has violated terms of probation, home detention, and parole. In light of his criminal history and his inability to abide by the rules of society and/or the Department of Correction, we cannot say that the aggregate six-year and nine-month sentence imposed in this case is inappropriate.

Judgment affirmed.

Riley, J., and Brown, J., concur.