## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 16 2016, 7:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David A. Shircliff
Bedford, Indiana

Jennifer G. Schlegelmilch
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jaaz Alexander Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 16, 2016

Court of Appeals Case No.
79A02-1512-CR-2273

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1402-FA-11

**Najam, Judge.**

# Statement of the Case

Jaaz Alexander Jones appeals his convictions after a jury found him guilty of burglary, as a Class A felony, and robbery, as a Class B felony. Jones raises the following three issues for our review:

1. Whether the trial court erred when it denied Jones' motion to dismiss, which he had premised on his theory that the State had failed to preserve materially exculpatory, or at least potentially useful, evidence.

2. Whether the trial court erred when it instructed the jury.

3. Whether the State failed to present sufficient evidence to support Jones' convictions.

We affirm.

# Facts and Procedural History

In the overnight hours of February 12 to 13, 2014, Alexis Daniels, Cortez Collins, and Lawrence Anderson planned to break into the apartment of Tim Mounts in Lafayette to rob him. At Collins' insistence, the group waited for another associate of Collins', Jones, to arrive from Indianapolis to accompany them. Once Jones arrived, he and Anderson drove to Mounts' apartment in Jones' white Chevy Impala. The others went in Collins' black Chevy Monte Carlo.

Jessica Wise, Mounts' girlfriend, lived at Mounts' apartment and was watching a DVD of Jurassic Park on a PlayStation 3 when Daniels knocked on the

apartment door. Although Mounts was not home at the time, Wise recognized Daniels, and, upon opening the door, Daniels entered the apartment with three African-American men who had their faces covered and were armed with firearms. One of the men severely beat Wise while the other two searched the apartment. The intruders eventually left with a safe and the PlayStation 3.

[5] Wise contacted law enforcement shortly thereafter and identified Daniels. Lafayette Police Department ("LPD") Officer Nathan Lamar went to nearby Cambridge Estates, where Daniels lived, to find her. Upon pulling into Cambridge Estates, Officer Lamar observed two black males. Officer Lamar stopped the two men, one of whom was Jones, and asked if they lived there. Jones responded that he did not. Jones then informed the officer that he had a firearm, and Officer Lamar safely disarmed Jones. Jones further informed Officer Lamar that he had arrived in Lafayette about twenty minutes beforehand in his nearby Chevy Impala. Officer Lamar walked over to the Impala and observed a PlayStation 3 in the back seat. He removed the PlayStation 3 from the Impala and powered it on from his own vehicle, at which time he was able to eject a DVD of Jurassic Park from the machine. Officer Lamar then arrested Jones. Officers arrested Jones' confederates a short time later. The State charged Jones with numerous offenses, including burglary, as a Class A felony, and robbery, as a Class B felony.

[6] Officers impounded Jones' Impala and searched it. In their search, the officers found a ski mask, which one of the intruders at Mounts' apartment had worn. While the vehicle was in the LPD's possession, Jones' counsel did not

investigate the vehicle or place an evidentiary hold it. Thereafter, the LPD notified Jones that he could retake possession of the Impala from Jim's Garage, where it had been impounded. On March 18, 2014, Jim's Garage sent a notice, by way of certified mail, to Jones stating that the Impala would be sold at public auction as an abandoned vehicle if not claimed. The vehicle went unclaimed, and Jim's Garage sold it on May 8.

[7] On July 22, Jones moved to dismiss the State's charges against him on the theory that the Impala was materially exculpatory, or at least potentially useful, evidence, and the sale of the Impala denied him a fair trial. The trial court held its ruling on Jones' motion in abeyance pending trial. At his ensuing jury trial, Jones renewed his motion to dismiss, at which time the court denied the motion.

[8] At trial, Daniels testified against Jones. During closing, Jones argued to the jury that it should draw a negative inference against the State from the sale of the Impala because the State had asserted that Anderson, while wearing a bloody shirt following the intrusion into Mounts' apartment, had ridden in the Impala, and that the absence of any blood evidence inside the Impala would have exonerated Jones of the State's allegations. Jones also asserted that the Impala had unique features, such as unusual headlights, that would have made it recognizable by witnesses who did not describe any such characteristics. Jones further requested the court to instruct the jury that it may draw a negative inference against the State from the sale of the Impala, but the trial court denied Jones' request.

[9] The jury found Jones guilty as charged. The trial court entered judgment of conviction on burglary, as a Class A felony, and robbery, as a Class B felony. This appeal ensued.

## Discussion and Decision

### *Issue One: Motion to Dismiss*

[10] Jones first asserts that the trial court erred when it denied his motion to dismiss because the Impala was materially exculpatory, or at least potentially useful, evidence. Generally, we review the trial court's ruling on a motion to dismiss for an abuse of discretion. *Pavlovich v. State*, 6 N.E.3d 969, 974 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or if the court's judgment is contrary to law. *See id.*

[11] Jones asserts that the State denied him his due process rights when it failed to preserve the Impala. In such cases, "we must first decide whether the evidence is potentially useful evidence or material[ly] exculpatory evidence." *State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010).

> Evidence is materially exculpatory if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [it is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Noojin v. State*, 730 N.E.2d 672, 675-76 (Ind. 2000) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." Black's Law Dictionary 597 (8th ed. 2004). A prosecutor's duty to preserve

exculpatory evidence is limited to evidence that might be expected to play a significant role in the defendant's defense. *Noojin*, 730 N.E.2d at 675 (quoting *Trombetta*, 467 U.S. at 488). Failure to preserve material[ly] exculpatory evidence violates due process regardless of whether the State acted in good or bad faith. *Blanchard v. State*, 802 N.E.2d 14, 27 (Ind. Ct. App. 2004) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)).

Evidence is merely potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 26 (citing *Youngblood*, 488 U.S. at 57). The State's failure to preserve potentially useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of the police. *Id.* at 26-27.

*Id.* (alterations original).

[12] Here, Jones asserts that his white Chevy Impala was not the same white Chevy Impala identified by witnesses as one of the two vehicles that transported the intruders to and from Mounts' apartment. According to Jones, had the State preserved his Impala, he would have been able to demonstrate that there was no blood inside the vehicle, which, he alleges, would have been relevant to discount the State's assertion that Anderson was wearing a bloody shirt when he rode in the vehicle. Jones further argues that his vehicle had unique characteristics, which the witnesses who had observed the Impala did not suggest they had noticed.

[13] Accordingly, Jones first contends that his Impala was materially exculpatory evidence. We cannot agree. Daniels testified that she entered Mounts'

apartment with Jones and that she observed Jones inside the apartment. She testified that Jones drove a white Chevy Impala. And officers found a PlayStation 3 inside Jones' Impala that matched the machine stolen from Mounts' apartment.

[14] At best, had the State preserved Jones' Impala he could have impeached Daniels' description of his car. And he could have, as he did anyway, cast doubt on the presence of Anderson in his car because no blood evidence had been discovered. But that does not place the Impala at a level that it "tend[s] to establish a criminal defendant's innocence." *Durrett*, 923 N.E.2d at 453-54. And neither did the Impala possess "an exculpatory value that was apparent" before it was sold. *Id.* (quotation marks omitted). Thus, the Impala was not materially exculpatory evidence.

[15] In the alternative, Jones asserts that the Impala was at least potentially useful. To demonstrate that he is entitled to have the charges against him dismissed based on the State's failure to preserve potentially useful evidence, Jones must demonstrate that the State's failure to preserve that evidence was in bad faith. *See id.* "Bad faith is defined as being not simply bad judgment or negligence[] but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity." *Wade v. State*, 718 N.E.2d 1162, 1166 (Ind. Ct. App. 1999) (quotation marks omitted), *trans. denied*. Simply, Jones has presented no evidence of bad faith on the part of the State. Accordingly, we affirm the trial court's denial of Jones' motion to dismiss.

## Issue Two:  Jury Instructions

[16]     Jones next contends that the trial court abused its discretion when it declined to give one of his proffered jury instructions.  As our supreme court has explained:

> Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion.  We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions.  Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case.

*Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (citations and quotation marks omitted).

[17]     Here, Jones proffered a jury instruction regarding the State's purported failure to preserve the Impala.  But Jones' argument on this issue is premised on his assertion that the evidence demonstrated that the Impala was either materially exculpatory or potentially useful evidence.  *See* Appellant's Br. at 21-22.  As explained above, the evidence does not support those conclusions.  Moreover, the trial court did instruct the jury that it could find reasonable doubt based on a lack of evidence.  Accordingly, Jones' proffered jury instruction was not supported by the evidence, and the jury instructions as a whole did not "mislead[] the jury as to the law in the case." *Pattison*, 54 N.E.3d at 365.  Thus,

the trial court did not abuse its discretion when it rejected Jones' proffered jury instruction.

## *Issue Three: Sufficient Evidence*

[18]  Finally, Jones asserts that the State failed to present sufficient evidence to support his convictions. Our standard for reviewing the sufficiency of the evidence needed to support a criminal conviction is as follows:

> First, we neither reweigh the evidence nor judge the credibility of witnesses. Second, we only consider the evidence supporting the [verdict] and any reasonable inferences that can be drawn from such evidence. A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling.

*Willis v. State*, 27 N.E.3d 1065, 1066-67 (Ind. 2015) (citations and quotation marks omitted).

[19]  In essence, Jones' entire argument on this issue is that the State failed to present sufficient evidence to support his conviction because certain portions of Daniels' testimony were not properly supported by independent evidence showing the existence of a conspiracy with Jones. *See, e.g.*, *Lott v. State*, 690 N.E.2d 204, 209 (Ind. 1997) (holding that, to admit a statement of a co-conspirator as nonhearsay, the State must "provide other evidence . . . the

conspiracy existed as a precondition to admitting" the out-of-court statements). While the trial court did not enter a judgment of conviction against Jones on the conspiracy charges, nonetheless Daniels' testimony was substantive evidence against Jones on all allegations.

[20] Assuming for the sake of argument that Daniels' testimony regarding out-of-court statements made by her confederates was inadmissible, the State still presented sufficient independent evidence to support Jones' convictions. Daniels testified that she personally saw Jones enter Mounts' apartment, participate in the intrusion, and drive a white Chevy Impala. Tr. at 296-97. Wise testified that Daniels entered the apartment with three armed, African-American men. Officer Lamar observed Jones near Daniels' apartment shortly after the intrusion. Officer Lamar found a firearm on Jones and, in Jones' white Chevy Impala, a PlayStation 3 with a DVD of Jurassic Park inside it, which matched the PlayStation that had been stolen from Mounts' apartment. A reasonable fact-finder could conclude from that evidence alone that Jones committed burglary, as a Class A felony, and robbery, as a Class B felony. *See Meehan v. State*, 7 N.E.3d 255, 258-59 (Ind. 2014). Thus, we affirm Jones' convictions.

[21] Affirmed.

Vaidik, C.J., and Baker, J., concur.