**Branton Allen NOOJIN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45S00–9812–CR–827.

Supreme Court of Indiana.

June 27, 2000.

Mark A. Bates, Appellate Public Defender, Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys or Appellee.

BOEHM, Justice.

Branton Noojin was convicted of murder and voluntary manslaughter. He was sentenced to consecutive sixty and forty-year terms. In this direct appeal he contends that (1) the trial court should have dismissed the charges against him because a detective did not preserve a rough draft of a statement from a witness; (2) the trial court abused its discretion in admitting hearsay testimony under the excited utterance exception; (3) the trial court erred in refusing his tendered instruction regarding the weight to be given to the testimony of a witness who had been granted immunity; and (4) the trial court erred in imposing

consecutive sentences. We affirm the judgment of the trial court.

## Factual and Procedural Background

In the early afternoon hours of December 19, 1997, Hammond police were dispatched to the home of Raymond and Maria Flowers. They found Raymond's body in the doorway and that of his wife Maria a few feet away. Autopsies revealed that Raymond died as a result of a gunshot wound to the chest, and Maria died from a gunshot wound to the head.

Noojin appeared at David Flores' apartment at an unspecified time on December 19. According to Flores, Noojin was "nervous, jumping" and told Flores that he had "just popped" an African–American. He explained, "the guy hit him, and ... there was a gun on the coffee table and he picked it up and shot him." According to Flores, Noojin also said that a "girl walked in the room, and he turned around and shot her." Noojin gave Flores a gun, which Flores hid in the attic. At about 7:00 p.m. that evening, police arrived at Flores' apartment and asked if Noojin was there. Noojin went outside to speak with police. When a detective sought Flores' consent to search the apartment, Flores retrieved the gun from the attic and gave it to the detective. A firearms examiner determined that two bullets recovered at the autopsies and two spent casings recovered from the Flowers' apartment had been fired from the handgun police found at Flores' apartment.

Lavertis Lynk had been inside the Flowers' apartment on the morning of December 19 where he saw Noojin along with Raymond and Maria. He also observed a gray and black handgun lying on a table in the apartment.

Noojin was charged with two counts of murder. The jury found him guilty of the murder of Maria and of voluntary manslaughter of Raymond. He was sentenced to sixty years for murder to be served consecutively with forty years for voluntary manslaughter.

## I. Failure to Preserve Witness Statement

Noojin contends that the trial court erred in denying his pretrial motion to dismiss that was based on a claim of destruction of evidence. Flores testified at trial that he had given three or four oral statements to police but denied any knowledge of the killings until the final statement. According to Flores, a detective was typing on a computer during each statement and the detective deleted several paragraphs of the earlier statements. After Flores recounted that Noojin had told him that he had killed two people, the detective presented him with a hard copy of a statement.

The detective testified that Flores gave an oral statement and only one version was reduced to writing. The detective printed that version and gave Flores an opportunity to review it. Flores made a correction to one word; the detective made the change on the computer and printed a revised copy, which Flores then read and signed. The detective then tore up the previous statement. The trial court denied the motion to dismiss at a pretrial conference that is not included in the record. The motion was renewed at trial and again denied. The basis of the trial court's ruling is not entirely clear, but it appears that the trial court believed the detective's version and not Flores' because the ruling recited that changing one word from the earlier statement was not exculpatory and there was no destruction of material evidence.

The United States Supreme Court has explained the scope of the prosecutor's duty to preserve exculpatory evidence as being

limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature

that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (footnote and citation omitted); *Holder v. State,* 571 N.E.2d 1250, 1255 (Ind.1991).[1] The Court has also held that the failure to preserve "potentially useful evidence"—as opposed to material exculpatory evidence—violates the Fourteenth Amendment only when the defendant can show bad faith on the part of police. *See Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Here, oral accounts were not reduced to writing and a typewritten account was discarded after one word was changed at the request of Flores. This unpreserved evidence does not meet the requirement of possessing "an exculpatory value that was apparent before the evidence was destroyed." It is not exculpatory at all. It is at most potential evidence impeaching Flores' account of Noojin's confession. Comparable evidence—Flores' trial testimony recounting his various statements to police—was fully available and explored in some depth through cross-examination at trial. The trial court properly denied the motion to dismiss.

## II. Excited Utterance

Noojin next contends that the trial court abused its discretion in admitting the testimony of two witnesses under the excited utterance exception to the hearsay rule. Diana Wright testified that she spoke to Rayanna Michalak on the afternoon of the killings. Wright testified at trial that Michalak told her that she had been to the Flowers' apartment where Raymond, Maria, and Noojin were present. She went across the street to retrieve a message for Raymond, and when she returned twenty to twenty-five minutes later no one answered the door and she saw Raymond lying on the floor through a window. Officer Daniel Small testified that he also spoke to Michalak on the afternoon of the killings. According to Small, Michalak told him that she "had seen Branton Noojin in the apartment with the two decedents, Raymond and Maria and she said that he killed them."

■ These two pieces of testimony presented hearsay that established (1) Noojin was at the Flowers' apartment shortly before their deaths and (2) Michalak's statement that Noojin was the killer. Hearsay is admissible under the excited utterance exception when the statement relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ind. Evidence Rule 803(2). The amount of time that has passed between the event and the statement is relevant but not dispositive. *Yamobi v. State,* 672 N.E.2d 1344, 1346 (Ind.1996). The issue is "whether the declarant was still under the stress of excitement caused by the startling event when the statement was made." *Id.* We review the trial court's ruling for an abuse of discretion. *Id.*

■ Wright testified that she spoke to Michalak within twenty-five minutes of Michalak's discovery of the dead bodies. According to Wright, Michalak was nervous, crying, and visibly shaken during the conversation. Under these circumstances, the trial court did not abuse its discretion in finding that Michalak was under the stress

1. In both the trial court and on appeal, Noojin also mentioned *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* applies to the suppression of evidence favorable to an accused that is material to guilt or punishment. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Williams v. State,* 714 N.E.2d 644, 649 (Ind.1999) (quotations and citation omitted). *Brady* has no application here, where the alleged exculpatory evidence no longer exists but its content was nonetheless revealed through testimony at trial. *See id.* (*Brady* does not apply when evidence is disclosed at or before trial). Accordingly, we examine the issue under *Trombetta.*

of excitement. Noojin nevertheless argues that it was error to allow Wright to recount that Michalak had told her that she had been in the apartment twenty minutes before discovering the bodies and observed Noojin with Raymond and Maria. He suggests that seeing the three alive together was not a startling event. But, as the trial court explained,

> the startling events are the two dead bodies. Placed her mind into a situation where she is sufficiently startled that she's not preconceiving something and having the plan to lie about her next statement. Twenty minutes before I saw them alive and they were with "X."

The trial court did not abuse its discretion in admitting Wright's testimony under the excited utterance exception to the hearsay rule.

█ In regard to Small's testimony, Noojin contends that Michalak (1) had time to reflect on her statements before speaking to Small and (2) could not testify that Noojin was the killer because she was not in the apartment at the time of the killings and could not have known the identity of the killer. Small testified that he spoke to Michalak approximately thirty-five minutes after police were dispatched to the scene. He testified that she was in tears, trembling, panicked, and very emotional. At some point the passage of time becomes sufficient to overcome a claim of excited utterance due to an initial shock. The passage of time is particularly significant where there is no continuing effect comparable to the ongoing loss of blood and other physical effects from being shot as was the case in *Yamobi. See id.* at 1347. Even if the trial court was within its discretion in finding that Michalak was still under the stress of excitement, it is assumed, although not specifically stated in the rule, that an excited utterance must be based on the declarant's personal knowledge. Indeed, in the typical excited utterance case, the declarant reports an event that he or she observed. If a statement is instead based on conjecture, it is not ad-

missible as an excited utterance to prove the truth of the matter reported. Here, Michalak's statement that Noojin had killed Raymond and Maria was not based on her personal knowledge. Accordingly, it was error to admit the statement as an excited utterance. However, it was clear from Small's testimony that Michalak's statement to Small that Noojin was the killer was her assumption, not anything she had observed. The error is harmless in view of its lack of persuasive force.

### III. Refusal of Tendered Instruction

█ Noojin argues that the trial court erred in refusing his tendered instruction on the weight to be given to the testimony of a witness who had received immunity. The tendered instruction reads as follows:

> You have heard testimony from a witness who received immunity; that is, a promise from the State that any testimony or other information he provided would not be used against him in a criminal case.
>
> You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

█ In reviewing a trial court's decision to give or refuse tendered instructions, this Court considers: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction was covered by other instructions that were given. *Wright v. State,* 690 N.E.2d 1098, 1109 (Ind.1997). Without explanation, Noojin contends that the instruction satisfies these three requirements. We disagree.

The tendered instruction was adequately covered by other instructions on witness credibility. Instruction 9 advised the jury:

> You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In consider-

ing the testimony of any witness, you may take into account his or her ability and opportunity to observe, the memory, manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; the relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considering all of the evidence in the case.

In addition, the tendered instruction is not a correct statement of the law in Indiana. We have repeatedly rejected claims of error for refusal to instruct jurors that they are required to consider the testimony of certain witnesses with great care or caution. *See, e.g., Sherwood v. State*, 702 N.E.2d 694, 698 & n. 2 (Ind.1998) (tendered instruction stated that the testimony of an accomplice, "who provides evidence against a Defendant for immunity or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses"); *Brown v. State*, 671 N.E.2d 401, 409–10 (Ind.1996) (tendered instruction stated that the testimony of an alleged accomplice and a person who provides evidence for pay, immunity, or personal advantage or vindication "must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses"). In *Brown*, a case in which an accomplice had entered into a plea agreement and agreed to testify against the defendant, we reiterated the longstanding rule that it is necessary that a plea agreement be disclosed to the jury, not that a cautionary instruction be given. *Brown*, 671 N.E.2d at 409 (citing *Morgan v. State*, 275 Ind. 666, 673, 419 N.E.2d 964, 968 (1981)). Here, the jury was informed of the grant of immunity and could consider it in judging the credibility of Flores under the instructions that were given. The trial court did not err in refusing Noojin's tendered instruction.

## IV. Sentencing

■ The trial court sentenced Noojin to sixty years for murder to be served consecutively with forty years for voluntary manslaughter. Noojin contends that the trial court erred in sentencing him to consecutive terms but does not challenge the enhancement of each count. Noojin appears to attack both the sentencing order as relying on improper aggravators and the aggregate sentence as manifestly unreasonable without distinguishing the two. These are two separate inquiries reviewed under different standards. *See Hackett v. State*, 716 N.E.2d 1273, 1276 n. 1 (Ind.1999).

### A. Sentencing Order

■ The trial court found as aggravating circumstances that Noojin had an extensive criminal history spanning three pages of the Presentence Report, that he had recently violated conditions of probation, and that he was in need of correctional and rehabilitative treatment that can best be provided by his commitment to a penal facility because his "prior lenient treatment has had no deterrent effect." The trial court also stated that the sentences were to be served consecutively because "the killing of Maria Flowers as specified in Count I was for no other reason than eliminating the eye witness by a man with wide experience in the criminal law." Noojin takes issue with the aggravating circumstances of his prior criminal history and that he killed Maria to eliminate an eyewitness. We review a trial court's finding of aggravating circumstances for an abuse of discretion. *See Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). It is well settled that a single aggravating circumstance may be sufficient to support imposition of an enhanced sentence. *See Thacker v. State*, 709 N.E.2d 3, 10 (Ind.1999). The same circumstance may be used to both enhance a sentence and impose consecutive sentences. *Taylor v. State*, 710 N.E.2d 921, 925 (Ind.1999).

Noojin contends that "the trial court did not list his prior criminal history in the sentencing order and there is nothing in the record to support this finding." The

Presentence Report was not included in the record of proceedings, but the trial court observed in its sentencing order that the defendant had a juvenile and adult history as explained on pages three, four, and the top half of page five of the report.

In *Downer v. State*, 501 N.E.2d 1052 (Ind.1986), the trial court imposed an enhanced sentence after finding as an aggravating circumstance that the defendant had an extensive criminal history. It did not elaborate or cite its source for this proposition. Under those circumstances we remanded to the trial court for a more specific set of findings. *See id.* at 1053. Unlike *Downer*, in this case the trial court referred to several pages of a presentence report and the comments of counsel also support the trial court's finding.[2] Absent a showing to the contrary, we will assume the trial court's finding is correct.

Nor did the trial court abuse its discretion in finding as an aggravating circumstance that Noojin killed Maria to eliminate an eyewitness. Flores testified that Noojin told him that he picked up a gun from the coffee table and shot Raymond, and that Maria then walked into the room and he "turned around and shot her." The trial court's finding is a reasonable inference drawn from the evidence at trial, and it is well settled that the nature and circumstances of a crime may be considered as an aggravating circumstance. *See Thacker*, 709 N.E.2d at 10.

### B. *Manifestly Unreasonable*

Although this Court has the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). The Court has explained this standard as "not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Prowell v. State*, 687 N.E.2d 563, 568 (Ind.1997).[3]

Both the nature of the offense and character of the offender support the enhanced, consecutive sentences in this case. As a general rule, multiple killings warrant the imposition of consecutive sentences. *See Walton v. State*, 650 N.E.2d 1134, 1137 (Ind.1995) (observing that "the circumstances of this crime required a clear and distinct punishment for each killing"). In addition, Noojin's extensive criminal history also calls for the imposition of a sentence above the presumptive. *See Gant v. State*, 694 N.E.2d 1125, 1129 (Ind.1998) (rejecting a challenge to an aggregate sentence of 110 years for murder and attempted murder in light of the defendant's criminal history). The aggregate sentence of 100 years is not manifestly unreasonable.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs except as to Part IV-B, as to which he concurs in result.

---

**2.** At the sentencing hearing the prosecutor noted that the Presentence Report showed "[n]umerous convictions in Hammond, Calumet City, and Texas." Defense counsel also mentioned Noojin's "long history of criminal activity" but pointed out that the history consisted of "alcohol, marijuana, the dumb things."

**3.** Both Noojin and the State contend that "a sentence is not manifestly unreasonable un-

less no reasonable person could find the sentence appropriate to the offense and the offender." As we have previously observed, this standard, which once appeared as Appellate Rule 17(B)(2), was deleted effective March 1, 1997, and is no longer the proper standard for the appellate review of sentences under Rule 17(B). *See Franklin v. State*, 715 N.E.2d 1237, 1241 n. 3 (Ind.1999).