## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2015, 5:58 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark A. Bates
Office of the Lake County Public Defender, Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ahkeem Shakur Scott-Manna, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | July 27, 2015 <br><br> Court of Appeals Case No. 45A03-1411-CR-391 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Diane Ross Boswell, Judge <br><br> Cause No. 45G03-1212-MR-8 |

**Kirsch, Judge.**

[1] Ahkeem Shakur Scott-Manna was convicted after a jury trial of murder,[1] a felony, and was sentenced to sixty years executed. Scott-Manna appeals, raising the following restated issues:

> I. Whether the trial court abused its discretion when it admitted into evidence the victim's statement identifying Scott-Manna as her assailant;
>
> II. Whether sufficient evidence was presented to prove the mens rea element and to support his conviction for murder; and
>
> III. Whether Scott-Manna's sixty-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] At approximately 10:00 a.m. on December 7, 2012, Gary police officers were dispatched to an apartment regarding a report that a man was hitting a woman. Officer LaRia Crews arrived at the apartment and knocked on the door. A young woman answered, who appeared to have been woken up by the knocking on the door. The woman told Officer Crews she had not called police, but that there was another woman in the apartment. She took Officer Crews to a bedroom door, and Dorothy Griffin exited the room. Griffin was "disheveled," "frazzled," "excited," "battered," and "crying." *Tr.* at 77-78. Griffin was hurt, and her left eye was swollen. Griffin stated that "Twin" had battered her. She said he had held her down in her bedroom and had beaten

---

[1] *See* Ind. Code § 35-42-1-1.

her, yelling that "he was not going to allow her to turn him in because they were trying to kill him." *Id.* at 83. When the police looked inside Griffin's bedroom, they found no one there. Griffin told them that the man who had beaten her had jumped out the window when the police knocked on the door. The officers noticed that the screen had been pushed out of the bedroom window and was lying on the ground. Officer Crews called an ambulance for Griffin at that time.

[4] Around the same time, other officers heard another dispatch concerning a man "running and screaming that someone's trying to kill him." *Id.* at 123. The man, later identified as Scott-Manna, entered a nearby McDonald's restaurant, jumped over the counter, and acted paranoid and frantic. The officers located him about eight blocks from Griffin's apartment. When they approached him, Scott-Manna repeated that someone was trying to kill him. He then stated, "I beat the old woman" and "Are you going to kill me?" *Id.* at 124. The officers told him they were not going to kill him and took him into custody.

[5] The officers then drove Scott-Manna to the apartment complex where the crime occurred. Griffin was being placed in an ambulance, and Officer Crews asked Griffin, "Is that the man that beat you," to which Griffin responded, "Yes, that's 'Twin.'" *Id.* at 127. Scott-Manna apologized and then stated, "Yeah, I beat that . . . bitch, bitch's ass." *Id.* He also said, "Yeah, I hit that old bitch. I busted her in the face." *Id.* at 144. Both Griffin and Scott-Manna were taken to the hospital. While in the emergency room, Scott-Manna had an outburst and again yelled, "Yeah, I hit that bitch." *Id.* at 87.

[6] Griffin died from her injuries a few days later on December 10, 2012. An autopsy was performed, which revealed that Griffin had internal hemorrhaging within her skull around the brain, between the layers covering the brain, and within the spaces of the brain. There was also evidence of severe swelling of the brain with parts of the brain beginning to be pushed outside of the skull "following the spinal cord and other openings." *Id*. at 109. The pathologist determined that Griffin died as a result of the intracranial hemorrhages due to blunt force injuries to her head, consistent with multiple blows to the head from a fist. *Id*. at 114, 116-17. The manner of death was determined to be homicide.

[7] On December 13, 2012, the State charged Scott-Manna with murder. A jury trial was held on March 3, 2014, which ended in a mistrial because of a hung jury. Prior to his retrial, Scott-Manna filed a motion to exclude the statement by Griffin, identifying Scott-Manna as her attacker, and the trial court denied the motion. A second trial was held on September 2, 2014, at the conclusion of which Scott-Manna was found guilty of murder. The trial court sentenced him to sixty-years executed. Scott-Manna now appeals.

# Discussion and Decision

## I. Admission of Evidence

[8] Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Jones v. State*, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013) (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000)), *trans. denied*. We reverse only where the decision is clearly against the logic and effect of the facts

and circumstances. *Id*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id*.

[9] Scott-Manna argues that the trial court abused its discretion when it allowed the victim's statement identifying him as her attacker to be admitted during the trial. He asserts that the admission of this statement was a violation of the Confrontation Clause because Griffin was unavailable to testify, he had no opportunity to cross-examine her and her statement constituted a testimonial statement. Scott-Manna contends that the statement by Griffin was testimonial because she was describing a past event, and the statement was not necessary to resolve an ongoing emergency.

[10] The Confrontation Clause is embodied in the Sixth Amendment to the United States Constitution and prohibits the admission of an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the declarant. *Lane v. State*, 997 N.E.2d 83, 92 (Ind. Ct. App. 2013) (citing *King v. State,* 985 N.E.2d 755, 758 (Ind. Ct. App. 2013), *trans. denied*), *trans. denied*.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

[11] *McQuay v. State*, 10 N.E.3d 593, 598 (Ind. Ct. App. 2014) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). In determining whether the primary purpose of an interrogation is to address an ongoing emergency, we must objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties. *Id*.

[12] In the present case, when the police knocked on Griffin's apartment door in response to a dispatch of a man hitting a woman, they interrupted Scott-Manna's attack on Griffin, and Scott-Manna jumped out of the apartment window and fled the scene. The police found Griffin battered, hysterical, and crying. As they were responding to the initial dispatch, the police received reports of a man in the area who was running and screaming that someone was trying to kill him. As Griffin had told the police that Scott-Manna had also stated that someone was trying to kill him, this second report indicated that Griffin's attacker was running around the neighborhood and was a present danger. The police were, therefore, handling an ongoing emergency that they needed to resolve to assure community safety. Griffin's statement identifying Scott-Manna verified that the police had arrested her attacker and was in furtherance of assisting the police in their ongoing emergency. Therefore, the statement was not testimonial in nature and did not violate the Confrontation Clause.

[13] However, even if the trial court abused its discretion in admitting Griffin's statement, such error was merely harmless. If a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the

error is inconsistent with substantial justice or if a substantial right of the party is affected. *Lehman v. State*, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), *trans. denied.* Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Id.*

[14] Scott-Manna challenges the admission of Griffin's statement identifying him as her attacker, which was made as Griffin was being taken to the ambulance shortly after the battery occurred. However, Scott-Manna's identity as the man who attacked Griffin was proven by other evidence. From his first interaction with the police, Scott-Manna admitted multiple times that he had battered Griffin. When the police initially approached him, he stated, "I beat the old woman." *Id*. at 124. He later repeated this admission when taken back to the scene of the crime when he said, ""Yeah, I beat that . . . bitch, bitch's ass." *Id*. at 127. He reiterated this admission at the scene and then again when taken to the emergency room. We conclude that these repeated admissions by Scott-Manna overshadow any prejudice that may have existed by the admission of Griffin's statement. The statement by Griffin was merely cumulative of the admissions made by Scott-Manna that he battered Griffin, and any error in the admission of the statement was harmless.

## II. Sufficient Evidence

[15] The deferential standard of review for sufficiency claims is well settled. This court will neither reweigh the evidence nor assess the credibility of witnesses.

*Tooley v. State*, 911 N.E.2d 721, 724 (Ind. Ct. App. 2009), *trans. denied*; *Elisea v. State*, 777 N.E.2d 46, 48 (Ind. Ct. App. 2002). Rather, we will consider only the evidence and reasonable inferences most favorable to the trial court's ruling. *Elisea*, 777 N.E.2d at 48. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley*, 911 N.E.2d at 724-25. Thus, if there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Trimble v. State*, 848 N.E.2d 278, 279 (Ind. 2006).

[16] Scott-Manna argues that insufficient evidence was presented to support his conviction for murder. He specifically contends that the evidence presented was not sufficient to prove that he knowingly or intentionally killed Griffin. Scott-Manna asserts that there was no evidence presented to show that he had problems with Griffin in the past, had threatened her previously, or used a deadly weapon when he attacked her. He, therefore, claims the evidence was only sufficient for the jury to determine that he knowingly and intentionally hit Griffin, which only constituted a battery.

[17] In order to convict Scott-Manna of murder, the State was required to prove that he knowingly or intentionally killed another human being. Ind. Code § 35-42-1-1(1). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "Knowledge and intent are both mental states and, absent an admission by the

defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite knowledge or intent to commit the offense in question." *Stokes v. State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010), *trans. denied*. The intent to commit murder may be inferred from the nature of the attack and the circumstances surrounding the crime, and it is within the province of the jury to draw an inference of knowledge or intent from the facts presented. *Whatley v. State*, 908 N.E.2d 276, 284 (Ind. Ct. App. 2009), *trans. denied*.

[18] The evidence presented at trial showed that Scott-Manna attacked Griffin in her apartment and hit her several times on the left side of her head. Griffin told the police that, as he battered her, Scott-Manna yelled that "he was not going to allow her to turn him in because they were trying to kill him." *Id*. at 83. A jury could infer from such a statement that Scott-Manna intended to kill Griffin in order to keep her from turning him in. In fact, Scott-Manna was interrupted in his attack of Griffin by the police knocking on the door of the apartment; he, therefore, only fled because the police arrived and not because he had concluded his attack. Additionally, the evidence showed that Scott-Manna was a young man, who was agile enough to jump out an apartment window to escape the police. Griffin was a sixty-year-old woman, who was in "frail" health and suffered from several health conditions. Therefore, the relative sizes and strengths of Scott-Manna and Griffin suggest that Scott-Manna either knowingly or intentionally killed Griffin. Further, Scott-Manna repeatedly battered Griffin in the head and face area with sufficient force to cause

substantial injuries. The multiple blows caused bruising to her left eye area and actual eyeball as well as the intracranial hemorrhaging that was found within her skull around the brain, between the layers covering the brain, and within the spaces of the brain. The attack also resulted in severe brain swelling that had begun to cause the brain to be pushed outside of the skull. Looking at the evidence most favorable to the jury's verdict, as we are required to do, we conclude that the jury could reasonably infer that, at the least, Scott-Manna knowingly killed Griffin. The evidence was sufficient to support Scott-Manna's conviction for murder.

## III. Inappropriate Sentence

[19] Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[20] Scott-Manna argues that his sixty-year sentence is inappropriate in light of the nature of the offense and the character of the offender. He claims that, as to the nature of the offense, he did not intend to kill Griffin and her cirrhosis

contributed to her death, and therefore, his sentence was not appropriate. Scott-Manna further asserts that, as to his character, his mental illness, remorse for his actions, and minimal criminal history show that his sentence was inappropriate.

[21] As to the nature of the case, the evidence shows that Scott-Manna attacked Griffin in her apartment, hitting her multiple times in the head and face area, and stopped when he was interrupted by the police knocking on the apartment door. Griffin eventually died from her injuries, which include severe hemorrhaging in her brain and swelling of the brain. Nothing in the record shows that Griffin provoked Scott-Manna in any way; in fact, Scott-Manna stated in a letter he wrote to Griffin before her death that he knew she was trying to help him when he attacked her. *State's Ex*. 28 D. Further, this was a crime committed by a young man against an older woman who was in frail health and not his physical equal.

[22] As to Scott-Manna's character, although this is his first adult conviction, he was only eighteen when he committed the instant crime and had juvenile adjudications for auto theft and resisting law enforcement. He had been placed on probation for one of his adjudications, which he did not successfully complete, and had been made a ward of the State and ran away from placement, eventually being placed in the Indiana Boys School. Scott-Manna failed to utilize the repeated efforts of the juvenile justice system to steer him away from a criminal path. Additionally, during his incarceration for this case, Scott-Manna displayed repeated misconduct by allegedly battering a

correctional officer and damaging jail property. Based on these allegations, new criminal charges of battery and criminal mischief were filed against Scott-Manna. Although the trial court acknowledged that Scott-Manna has some mental health issues, that acknowledgement does not necessarily make his sentence inappropriate. Based on the nature of the offense and the character of the offender, we conclude that Scott-Manna's sentence was not inappropriate.

[23] Affirmed.

Vaidik, C.J., and Bradford, J., concur.