## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 19 2016, 6:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Michael C. Borschel
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Adrian Anthony,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 19, 2016<br><br>Court of Appeals Case No.<br>49A02-1506-CR-709<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Lisa F. Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1312-MR-77010 |

**Kirsch, Judge.**

[1] Adrian Anthony ("Anthony") was convicted after a jury trial of murder,[1] a felony, robbery[2] as a Class A felony, and carrying a handgun without a license[3] as a Class A misdemeanor and was sentenced to sixty-two years. He appeals his convictions and raises the following restated issue for our review: whether the trial court abused its discretion when it admitted evidence that Anthony had possessed and fired the murder weapon eight days before the present crime because, he asserts, the evidence was inadmissible under Indiana Evidence Rule 404(b).

[2] We affirm.

## Facts and Procedural History

[3] On November 27, 2013, Ron Gibson ("Ron") and his brother Robbie Gibson ("Robbie") were working together on a duplex they were remodeling on Gray Street in Indianapolis, Marion County, Indiana. The brothers had started work that day at around 9:00 a.m. At some point later that day, when the brothers were working on the porch area of the duplex, two men, later identified as Anthony and Christopher Bell ("Bell"), walked into the front yard of the home. They were both wearing black hooded sweatshirts. Ron had previously seen

---

[1] *See* Ind. Code § 35-42-1-1(1). We note that the statutes under which Anthony was charged were amended effective July 1, 2014. However, he committed his offenses in November 2013, and we apply the statutes in effect at that time.

[2] *See* Ind. Code § 35-42-5-1.

[3] *See* Ind. Code § 35-47-2-1.

Anthony walking around the neighborhood during the prior two weeks. Anthony asked for a cigarette, and Ron replied that he did not have any cigarettes and that he was waiting on his boss. Anthony then asked "where the weed was at," and Ron stated that he did not know because he did not smoke. *Tr.* at 22.

[4] At this point, Ron assumed that the two men would leave, but instead, they walked onto the porch. Once on the porch, Anthony pulled out a handgun and told the brothers that he "didn't want no weed and he didn't want a cigarette, that it was a robbery." *Id.* at 23. Anthony pointed the gun at Robbie and took his wallet. Anthony handed the wallet to Bell and then told Ron to empty his pockets. Anthony approached Ron and held the gun to the back of Ron's neck when Ron told him he had nothing in his pockets. Anthony checked Ron's pockets and found Ron's cell phone. He demanded that Ron show him how to unlock the phone with a special pattern. At that time, Anthony stated to Ron, "I'm going to give you to the count of five and I'm going to shoot you," and he began counting down, "Five, four, three." *Id.* at 30-31.

[5] At the same time, a truck full of ladders and pulling a trailer turned onto Gray Street. Anthony asked Ron if it was Ron's boss, and he answered that it was. As the truck approached, Ron began yelling at it for help, causing the truck to slow down, and Anthony put the gun into his hooded sweatshirt. Bell ran across the street, and Anthony began to pace in the middle of the porch near Robbie. Ron also ran from the porch and across the street. As he got to the middle of the street, he saw Robbie's wallet on the ground. At that time, he

heard a gunshot and heard Robbie screaming, "Ronnie, he shot me." *Id*. at 32. Ron saw Robbie fall to the ground and saw Anthony flee from the porch in the same direction Bell had run.

[6] The police arrived at the scene, and Ron gave them a description of Bell and Anthony. Robbie was taken to the hospital, where he later died. Once police obtained a description of the men, they set up a perimeter of two to three blocks in every direction around the scene of the crime. Shortly thereafter, an officer saw two men matching the suspects' descriptions. These two men, later identified as Bell and Anthony, saw the police vehicle and ran to a nearby church. They tried to open the doors to the church, but the church was locked. The officer ordered Bell and Anthony to the ground, and both turned to the officer with their hands up. Bell complied, and the officer was able to apprehend him; however, Anthony fled the scene. Ron was brought to the location, and a show-up identification was conducted, in which Ron was unable to identify Bell as one of the perpetrators. Bell was released and walked away from the area.

[7] At the scene of the robbery and shooting, police found a fired nine millimeter cartridge casing. In their investigation, the police obtained information about Ron's stolen cell phone, and were able to track the phone to Terre Haute, Indiana, where they discovered that Bell had traveled by Greyhound bus. The police were able to get a potential address for Bell in Terre Haute, and on November 29, 2013, they arrested him at that address. The police found Ron's stolen cell phone inside of the apartment where Bell had been found. While the

police were searching for Bell in Terre Haute, they were also searching for Anthony in Indianapolis, and on November 30, Anthony was arrested. Ron was able to identify both Bell and Anthony after looking at a photographic array.

[8] The State charged Anthony with two counts of murder,[4] Class A felony robbery, and Class A misdemeanor carrying a handgun without a license. Prior to the trial, the State filed a notice of intent to use 404(b) evidence, stating that it intended to introduce evidence that, in addition to the instant crime, Anthony had also been charged with Class A felony attempted robbery resulting from events that transpired on November 19, 2013. *Appellant's App*. at 62. The State sought to present evidence that, on that date, Anthony had fired a single shot during an attempted robbery and that the nine millimeter cartridge casing in that case matched the one from the present case. *Id*. The State was seeking to "introduce this evidence as proof of identity of the murderer and access to the murder weapon." *Id*.

[9] At the hearing on the motion, the State informed the trial court that it did not "necessarily believe that access to the murder weapon is considered 404(b)" and that it would "tailor the evidence . . . [it presented] to be that the witnesses would . . . [identify Anthony] as possessing the gun on November 19" and that the casing from that incident matched the casing recovered in the present case.

---

[4] The State charged Anthony under two different subsections of Indiana Code section 35-42-1-1 for the same crime.

*Tr.* at 564-65. Anthony objected to this evidence being introduced, but the trial court overruled the objection and allowed the evidence to be introduced. Anthony requested that a limiting instruction be given, and the trial court agreed to do so. At trial, the State called two witnesses to testify about the November 19 incident, to which Anthony objected. During final instructions, the trial court gave the following limiting instruction:

> Evidence has been introduced that the Defendant was involved in conduct other than that charged in the information. This evidence has been received solely on the issue of Defendant's identity. This evidence should be considered by you only for that limited purpose.

*Appellant's App*. at 110. At the conclusion of the trial, the jury found Anthony guilty as charged. Due to double jeopardy concerns, the trial court entered judgment of conviction on only one count of murder, one count of Class A felony robbery, and Class A misdemeanor carrying a handgun without a license. Anthony was given an aggregate sentence of sixty-two years executed, and he now appeals.

## Discussion and Decision

[10] Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Jones v. State*, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013) (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000)), *trans. denied*. We reverse only where the decision is clearly against the logic and effect of the facts

and circumstances. *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id.*

[11] Anthony argues that the trial court abused its discretion when it allowed the State to introduce prior bad act evidence in violation of Indiana Evidence Rules 403 and 404(b). He contends that the trial court erred because it did not specifically find that the State sufficiently proved that he shot a handgun on November 19, 2013. Specifically, Anthony asserts that the "quantity and quality of the information from the two prior bad act witnesses [was] minimal" and did not establish a signature crime. *Appellant's Br.* at 12. He further claims the slight probative value of this evidence was greatly outweighed by the unfair prejudice and, therefore, should have been excluded.

[12] Indiana Evidence Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." The rationale behind this evidentiary rule is that the jury is precluded from making the "forbidden inference" that the defendant had a criminal propensity and therefore committed the charged conduct. *Rhodes v. State*, 771 N.E.2d 1246, 1251 (Ind. Ct. App. 2002) (citing *Thompson v. State,* 690 N.E.2d 224, 233 (Ind. 1997)), *trans. denied*. To determine whether Rule 404(b) evidence is admissible, "the court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the

charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Thompson v. State*, 728 N.E.2d 155, 160 (Ind. 2000). This court has held that "[e]vidence that a defendant had access to a weapon of the type used in a crime is relevant to a matter at issue other than the defendant's propensity to commit the charged act." *Pickens v. State*, 764 N.E.2d 295, 299 (Ind. Ct. App. 2002), *trans. denied.*

[13] Here, the State introduced evidence that, eight days before the murder and robbery in this case, Anthony had possession of and fired the weapon used to shoot Robbie. This evidence that Anthony had access to the weapon used to kill Robbie was relevant as to whether Anthony murdered Robbie and was not merely evidence of Anthony's propensity to commit the charges crimes. Thus, the evidence regarding the events of November 19 was relevant to show that Anthony had access to the weapon used in Robbie's murder.

[14] Anthony argues that the probative value of the evidence was slight, and the danger of unfair prejudice greatly outweighed this slight probative value. We disagree. Possession of the murder weapon eight days prior to the murder is highly probative. The trial court attempted to limit any unfair prejudice by not allowing any inquiry into the specific details of Anthony's attempted robbery on November 19. *Tr.* at 350-60, 571. Additionally, the trial court gave a limiting instruction regarding the challenged evidence in the present case that sought to limit the purpose of the evidence to prove the identity of Anthony. *Appellant's App.* at 110. We, therefore, conclude that the evidence of the events of November 19 were relevant to prove an issue other than his propensity to

commit the present crime and the possibility of unfair prejudice was outweighed by the probative value of the evidence that, a mere eight days before the murder of Robbie, Anthony had access to the weapon used to commit the murder.

[15] Anthony, however, asserts that the trial court erred in not applying the three-step analysis in *Camm v. State*, 908 N.E.2d 215 (Ind. 2009). In that case, our Supreme Court stated that, "the law governing the admissibility of specific acts evidence for 'other purposes' requires a trial court to make three findings": (1) that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; (2) that the proponent has sufficiently proven by a preponderance of the evidence that the person who allegedly committed the act did, in fact, commit the act; and (3) that the probative value of the evidence outweighs its prejudicial effect pursuant to Rule 403. *Id.* at 223. We conclude that the evidence was also admissible under this three-step analysis.

[16] Under the first step, Indiana courts have held that evidence of access to a weapon of the type used in a crime is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Pickens,* 764 N.E.2d at 299. Here, the evidence of the events of November 19, 2013 was introduced to establish that Anthony had access to the murder weapon. As to the second step, sufficient evidence was presented that Anthony was the person who committed the acts of November 19. Two eye witnesses identified Anthony as possessing and firing a weapon on November 19, and a firearms expert testified

that the casing from the attempted robbery on November 19 was fired from the same weapon as the casing found at the scene of Robbie's murder. *Tr.* at 351-53, 359, 368-70. Lastly, as to the third step, evidence that Anthony had possession of the murder weapon just eight days prior to the murder was highly probative, and the trial court took measures to limit the prejudice of this evidence by restricting the evidence allowed regarding the November 19 incident and giving a limiting instruction. Therefore, the possibility of any unfair prejudice was outweighed by the high probative value of the evidence. We find that the trial court did not abuse its discretion in admitting the evidence that Anthony possessed and fired the murder weapon eight days prior to the murder.

[17] Affirmed.

[18] Mathias, J., and Brown, J., concur.