## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 18 2017, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ryan P. Dillon
Marita K. Webb
Dillon Legal Group, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James I.M. Lines,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 18, 2017

Court of Appeals Case No.
55A01-1610-CR-2392

Appeal from the
Morgan Superior Court

The Honorable
Jane Spencer Craney, Judge

Trial Court Cause No.
55D03-1411-F5-1720

**Kirsch, Judge.**

James I.M. Lines ("Lines") was convicted after a jury trial of battery on a person less than fourteen years of age resulting in bodily injury[1] as a Level 5 felony, domestic battery[2] as a Level 6 felony, strangulation[3] as a Level 6 felony, and criminal confinement[4] as a Level 6 felony and was sentenced to a total of six years executed. Lines appeals his convictions, asserting that the trial court abused its discretion in admitting certain testimony at trial, and raises the following specific claims as to why the evidence was erroneously admitted:

> I.   Whether the trial court abused its discretion because the testimony was hearsay and did not fall into any of the exceptions to the hearsay rule;
>
> II.  Whether it was an abuse of discretion to admit the testimony because it constituted impermissible vouching; and
>
> III. Whether the trial court abused its discretion because the witness was not properly qualified to testify as an expert witness.

We affirm.

---

[1] *See* Ind. Code § 35-42-2-1(b)(1), (f)(5)(B).

[2] *See* Ind. Code § 35-42-2-1.3(a)(1), (b)(2).

[3] *See* Ind. Code § 35-42-2-9.

[4] *See* Ind. Code § 35-42-3-3(a).

# Facts and Procedural History

[3] Between November 10 and 12, 2014, A.L., who was nine years old at the time, lived with his mother, Stephanie, and his father, Lines, who was over eighteen years of age at that time, and his younger brother. That day, Stephanie returned to their home in Morgan County after she finished work, and she took a nap. When she awoke, Lines was angry with her because she had not yet made dinner. Because the gas in the home had been turned off, Stephanie had to cook using a camp stove, and she asked Lines to come into the kitchen to light the stove for her. After he lit the stove, he walked over to Stephanie and hit her in the nose with the palm of his hand. Stephanie then went into the bathroom and noticed a bruise above her eye. When she returned to the kitchen, Lines accused Stephanie of causing the bruise to herself and shoved her against the refrigerator. He placed his forearm on Stephanie's neck and pushed against it so that she could not breathe or speak. Stephanie attempted to run away from Lines, but he chased her, pulled her hair, and dragged her through the house by her hair. Lines also took Stephanie's cell phone so that she could not call for help, and he would not allow Stephanie to leave the house. He continued to abuse Stephanie by yelling at her, shoving her on the couch, holding her on the ground, and putting his forearm on her neck and squeezing to the point that "it felt like he was going to crush [her] esophagus." *Tr. Vol. I* at 212. The children were not present when this incident occurred. Eventually, Lines went into the other room and fell asleep.

[4]    The next day, November 11, Stephanie went to the hospital to visit her mother who had had surgery, and when she returned home, she sat down in the living room with the children. Lines asked Stephanie where she had been and took her cell phone. The argument moved to the kitchen, where Lines began to strangle Stephanie by placing his forearm on her neck and then shoved her against the refrigerator and wall, pulled her hair, and pulled her down to the ground where he continued to strangle her. The strangulation made it difficult for Stephanie to breathe. She was able to go to the living room, where the children were, and thought Lines would not attack her in front of the children. However, Lines again began to strangle her, this time with his hands around her neck. Stephanie was terrified because she could not break free and thought she might die. Stephanie went back into the kitchen, and Lines followed her and punched her in the side, which caused her to gasp for air. Lines pointed to the family room and told Stephanie, "I ought to take you in there and bash your head in." *Id*. at 216. He also told her, "I should have killed you a long time ago." *Id*. Lines dragged Stephanie into the family room as she screamed and tried to get away from him. A.L. observed Lines drag Stephanie by the hair and hit her. As a result of being abused by Lines, Stephanie suffered bruising and tenderness around her left eye.

[5]    A.L. ran into the family room, and Stephanie told him to "run to the neighbor's and have her call the cops." *Id*. at 216-17. When A.L. reached the front door, Lines grabbed him by the arm and pulled him away from the door. He told A.L. "if you try to run out this door again, I'll beat your ass." *Id*. at 217. Lines

then picked up both children, who were screaming and crying, by their arms and threw them down. A short time later, Lines walked into the other room and went to sleep. The children laid down next to Stephanie on the couch, and they all fell asleep.

[6] On the next day, November 12, Annette Rohlman ("Rohlman"), who was a registered nurse with the Martinsville School District and was also the Morgan County Coroner, met with A.L. at his school where she was working that day as the school nurse. The school had received a call from a concerned person, who had reported that A.L. and his brother needed to be checked for injuries due to being involved in a domestic disturbance the prior night. Rohlman called A.L. to her office and asked him if he had any concerns or if anything was going on that he needed to talk about. A.L. told Rohlman that he felt sick to his stomach. *Id.* at 194. A.L. was shy at first and then became upset and tearful. He told Rohlman that things had happened at his home the night before that he wanted to talk to her about. He was shaking a little bit and told Rohlman that his mom and dad had been fighting that night and that his dad had hit his mom repeatedly and choked her. *Id.* at 196. A.L. said that he was told to try to get help, but that when he ran to the door his dad grabbed him by the arm, jerked him away, and threw him to the floor. *Id.* at 197. A.L. relayed to Rohlman that his dad told him he would "beat his ass if [A.L.] did it again" and that he needed to stay where he was. *Id.* Rohlman observed redness and bruising on both sides of A.L.'s right forearm which she felt was consistent with

what A.L. had told her, and she reported the situation to the Department of Child Services and the Morgan County Sheriff's Department. *Id.* at 204.

[7]     On November 13, 2014, the State charged Lines with six counts: Count I, Level 5 felony battery on a person less than fourteen years of age resulting in bodily injury; Count II, Level 6 felony criminal confinement; Count III, Level 6 felony domestic battery; Count IV, Level 6 felony criminal confinement; Count V, Level 6 felony strangulation; Count VI, Level 6 felony strangulation. A jury trial was held, and at trial, Lines objected to Rohlman's testimony regarding the statements made by A.L. on the grounds that the statements were hearsay. *Id.* at 196. The State argued that the statements were admissible under the excited utterance exception to the hearsay rule. The trial court found that the statements were not an excited utterance because they were too far removed from the incident; however, the trial court instead found that the statements did not constitute hearsay because "A.L. [was] a witness" and overruled the objection. *Id.*

[8]     Lines also objected to Rohlman's testimony regarding whether the bruise she observed on A.L.'s arm was consistent with a grabbing of the arm on the basis that there was no foundation for Rohlman "to testify about what was consistent based upon a narrative given by a child." *Id.* at 203. The State responded that Rohlman was "a registered nurse . . . [and] a coroner who . . . knows about injuries and the nature of receiving them and how they look and what to look for. I think she ha[s] extra information, extra training that would help the jury." *Id.* at 203. The trial court sustained the objection, but later, a juror asked

Rohlman the question, "[w]as the bruising consistent with the grabbing of an arm?" *Id*. at 204. Lines objected, and the State responded that Rohlman was a skilled witness and needs to be "shown to have enough knowledge to make the opinion helpful to [sic] clear understanding of a witness's testimony in determining a fact." *Id*. The State further stated, "She's a skilled witness, or expert witness, I believe, she has the training." *Id*. The trial court overruled the objection, and Rohlman testified that the bruising on A.L.'s arm was consistent with grabbing an arm. *Id*.

[9] A.L. also testified at the trial, prior to Rohlman, and gave testimony concerning the events of November 11, 2014. This testimony included that Lines battered Stephanie and that Lines grabbed A.L.'s arm when he attempted to go outside to get help, and then Lines threw A.L. on the floor. *Id*. at 180-83, 189. Additionally, Stephanie testified regarding the events that occurred on November 10 and 11, 2014. Lines testified at the trial and acknowledged that he had a physical altercation with Stephanie, although he claimed that the physical violence was mutual and he only hit Stephanie in order to protect himself. *Tr. Vol. III* at 102-04, 115. Lines also admitted that he grabbed A.L. by the arm, and claimed that A.L. pulled away and fell on the floor. *Id*. at 106-09. At the conclusion of the evidence, the jury found Lines guilty of Level 5 felony battery on a person less than fourteen years of age resulting in bodily injury, Level 6 felony domestic battery, Level 6 felony strangulation, and Level 6 felony criminal confinement. The trial court sentenced Lines to an aggregate sentence of six years executed. Lines now appeals.

# Discussion and Decision

[10] Lines argues that the trial court abused its discretion when it admitted certain testimony of Rohlman at the trial. Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Jones v. State*, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013) (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000)), *trans. denied.* We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id.* An error is harmless if it does not affect the defendant's substantial rights. Ind. Trial Rule 61. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the erroneously-admitted evidence contributed to the conviction. *Hape v. State,* 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), *trans. denied.* Furthermore, if the erroneously-admitted evidence is merely cumulative of other evidence in the record, it is harmless error and not grounds for reversal. *Hunter v. State,* 72 N.E.3d 928, 932 (Ind. Ct. App. 2017), *trans. denied.*

## I.   Hearsay Statements

[11] Lines contends that the trial court abused its discretion in admitting testimony of Rohlman regarding statements made to her by A.L. Lines asserts that these statements were hearsay because they were out of court statements offered for the truth of the matter and were, therefore, inadmissible. He further argues that the testimony did not fall into the hearsay exception as an excited utterance

because the statements provided by A.L. to Rohlman occurred the day after the events described, and it was not established that A.L. was still under the stress of excitement caused by the events when he made the statements to Rohlman. Lines also alleges that the statements did not fall into the hearsay exception for statements made for medical diagnosis because A.L. did not make the statements to Rohlman for the purpose of medical diagnosis or treatment. Lines additionally maintains that the testimony was not admissible under *Crawford v. Washington*[5] because A.L. was available for testimony and cross-examination at trial.

[12] We need not address Lines's hearsay and *Crawford* arguments because the testimony of Rohlman regarding the statements made to her by A.L. is cumulative of other evidence presented at trial that established the events that occurred on the night of November 11, 2104. The admission of evidence is harmless error and is not grounds for reversal where the evidence is merely cumulative of other evidence properly admitted. *Hunter,* 72 N.E.3d at 932. Here, in addition to Rohlman, A.L. testified to the events that occurred on November 11 as he observed them, including that Lines battered Stephanie and grabbed A.L. by the arm. *Tr. Vol. II* at 181-83. Additionally, Lines testified that he had a physical altercation with Stephanie and that he grabbed A.L. by the arm. *Tr. Vol. III* at 102-04, 106-09. Further, Stephanie testified as to the

---

[5] *Crawford v. Washington*, 541 U.S. 36 (2004).

incident that occurred on November 11. *Tr. Vol. II* at 214-17. Therefore, Rohlman's testimony as to the statements made to her by A.L. were merely cumulative of other evidence before the jury, and the any error in its admission was harmless error.

## II.  Vouching Testimony

Lines argues that the trial court abused its discretion in admitting the testimony of Rohlman regarding the statements that A.L. made to her because the testimony constituted impermissible vouching.  He contends that the testimony by Rohlman was provided for the sole purpose of bolstering A.L.'s credibility. Lines asserts that Rohlman had no personal knowledge of the events described by A.L., and offering this statement served only the purpose of bolstering credibility of the witness, which is impermissible.

Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."  Such vouching testimony is considered an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony.  *Alvarez-Madrigal v. State*, 71 N.E.3d 887, 892 (Ind. Ct. App. 2017) (citing *Carter v. State*, 31 N.E.3d 17, 29 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*.

Here, Rohlman testified to what A.L. had told her about what occurred on November 11 at his home, that Lines and Stephanie had been fighting and that

Lines had hit Stephanie repeatedly and choked her. *Tr. Vol. II* at 196-97. Rohlman also related that A.L. had told her that, when A.L. had run to the door to get help, Lines had grabbed A.L. by the arm, jerked him away, and threw him to the floor. *Id*. at 197. A.L. also reported to Rohlman that Lines had told him that "he would beat [A.L.'s] ass if he did it again." *Id*. Rohlman did not state any opinions or make any statements about the truth or falsity of A.L.'s allegations, nor did she express any opinions regarding A.L.'s credibility. We, therefore, conclude that Rohlman's testimony did not constitute impermissible vouching, and the trial court did not abuse its discretion in admitting it.

### III. Opinion Testimony

Lines asserts that the trial court abused its discretion in qualifying Rohlman as an expert witness and allowing her to testify as to her opinion on causation of the bruise on A.L.'s arm. He argues that Rohlman was not qualified as an expert to testify as to whether the bruise that she observed on A.L.'s arm was consistent with his arm being grabbed. Lines contends that the trial court did not properly establish that Rohlman had the training and experience to be qualified as an expert and to allow her to testify regarding the consistency of the bruise with the events that occurred. The State argues that Rohlman offered her testimony as a skilled witness rather than an expert witness.

We note that it is not clear whether the trial court qualified Rohlman as a skilled witness or as an expert witness. The State initially requested that the trial court qualify Rohlman as a skilled witness, stating that she had "extra

information, extra training that would help a jury" because she was a nurse and a coroner. *Tr. Vol. II* at 203. The State later noted, "[S]he is a skilled witness. She needs to be shown to have enough knowledge to make the opinion helpful to [sic] clear understanding of a witness's testimony in determining a fact." *Id.* at 204. In response to a question by the trial court as to whether the State was asking "to qualify her as an expert," the State responded, "She's a skilled witness, or expert witness, I believe, she has the training." *Id.* The trial court then overruled Lines's objection and permitted Rohlman to testify that the bruise on A.L.'s forearm was consistent with grabbing an arm, but did not specify whether she was qualified to do so as a skilled witness or an expert witness. *Id.*

[18] Indiana Evidence Rule 701 governs the admission of testimony by skilled witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of opinion is limited to one that is:
>
> (a) rationally based on the witness's perception; and
>
> (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

The difference between skilled witnesses and ordinary lay witnesses is their degree of knowledge concerning the subject of their testimony. *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015). Neither has the "scientific, technical, or other specialized knowledge" of experts, Ind. Evidence Rule 702(a), and both

ordinary lay and skilled witnesses testify from their perceptions alone, not necessarily established scientific principles. *Id*. at 353. Skilled witnesses, though, possess knowledge beyond that of the average juror. *Id*.

[19] Indiana Evidence Rule 702(a) provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

In construing this rule, only one of these characteristics—knowledge, skill, experience, training, or education—is necessary to qualify an individual as an expert. *Lyons v. State*, 976 N.E.2d 137, 141-42 (Ind. Ct. App. 2012). Our Supreme Court has determined that the "specialized knowledge" set forth in Evidence Rule 702(a) is not necessarily scientific knowledge, and it need not be proven reliable by means of "scientific principles." *Malinski v. State,* 794 N.E.2d 1071, 1084 (Ind. 2003). Rather, such evidence is governed only by the requirements of Rule 702(a), and any weaknesses or problems in the testimony go only to the weight of the testimony, not to its admissibility, and should be exposed through cross-examination and the presentation of contrary evidence. *Lyons*, 976 N.E.2d at 142 (citing *Turner v. State,* 953 N.E.2d 1039, 1050 (Ind. 2011)). Under Evidence Rule 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

[20] Although it is not clear if the trial court found Rohlman to be a skilled witness or expert witness, we find that she qualified as both. Rohlman was qualified as a skilled witness because, as a nurse and a coroner, she possessed knowledge beyond that of the average juror, and she based her opinion as to the cause of the bruise on her perception of A.L.'s injury and her additional knowledge. Her opinion was also helpful to a clear understanding that such an injury was consistent with being physically grabbed.

[21] Additionally, Rohlman was also qualified as an expert witness. Rohlman testified that she is a registered nurse who works as a nurse for the school district, and she is also the Morgan County Coroner. *Tr. Vo. II* at 192. She testified that she has an associate's degree in the science of nursing and that she is a certified medical legal death investigator. *Id.* Rohlman formally worked as a police officer with the Mooresville Police Department, and as a coroner, she is required to complete sixteen hours of continuing education each year, which includes different death investigation cases. *Id.* at 193. Based on her knowledge, skill, training, and practical experience, particularly as a nurse in a school setting, the trial court had sufficient information to qualify Rohlman as an expert witness. Rohlman observed a bruise on A.L.'s forearm that had redness and bruising on both sides of the arm, which she believed was consistent with a grabbing of the arm. *Id.* at 197, 203-05. We conclude that the trial court did not abuse its discretion in admitting the testimony by Rohlman that the bruise on A.L.'s forearm was consistent with being grabbed on the arm.

[22] Lines takes issue with the fact that, during cross-examination, Rohlman testified that she did not know what stage the bruise was and could not refer to the stages of bruising. *Id*. at 205-06. Any weaknesses or problems in the testimony go only to the weight of the testimony, not to its admissibility, and should be exposed through cross-examination and the presentation of contrary evidence. *Lyons*, 976 N.E.2d at 142. Rohlman was qualified as an expert witness to testify that the bruise she observed on A.L.'s arm was consistent with being grabbed on the arm and not what stage the bruise was. This testimony that occurred during cross-examination allowed Lines to expose possible weaknesses or problems with Rohlman's testimony and did not affect the admissibility of her opinion testimony. The trial court did not abuse its discretion in admitting Rohlman's testimony.

[23] Affirmed.

[24] Mathias, J., and Altice, J., concur.